IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **THE CITY OF CHICAGO**, <br><br> *Plaintiff*, <br><br> v. <br><br> **WILLIAM P. BARR**, <br> Attorney General of the United States., <br><br> *Defendant*. | <br><br><br> Civil Action No. 1:18-cv-06859 <br><br> Hon. Harry D. Leinenweber |

**DEFENDANT'S REPLY IN SUPPORT OF HIS MOTION TO DISMISS AND
OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

Respectfully submitted,

JOSEPH H. HUNT
Assistant Attorney General

JOHN TYLER
Assistant Director

/s/ Daniel D. Mauler
DANIEL D. MAULER
Virginia State Bar No. 73190
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, DC 20001
Tel: (202) 514-8095
Fax: (202) 616-8470
E-mail: dan.mauler@usdoj.gov
*Counsel for Defendant*

# TABLE OF CONTENTS

INTRODUCTION...................................................................................................................1

ARGUMENT .......................................................................................................................2

I.    The Public-Disclosure Condition is Permissible..................................................2

    A.    This Requirement is Authorized by Statute and Does Not
        Violate the Separation of Powers.................................................................2

    B.    This Requirement is Consistent with the Spending Clause. .....................5

       1.  The Requirement is Related to the Purposes of the Byrne
           JAG Program. .......................................................................................6

       2.  The Requirement is Unambiguous. .....................................................8

II.   The Public-Disclosure Condition is Consistent with the
    Administrative Procedure Act. ..........................................................................10

III.  Any Injunction Should Be Limited to the Plaintiff .........................................10

CONCLUSION ...................................................................................................................11

# TABLE OF AUTHORITIES

**Cases**

*Benning v. Georgia*,
　391 F.3d 1299 (11th Cir. 2004) ................................................................ 8

*California v. Sessions*,
　284 F. Supp. 3d 1015 (N.D. Cal. 2018) .................................................. 7

*Charles v. Verhagen*,
　348 F.3d 601 (7th Cir. 2003) ................................................................... 8

*Chicago v. Barr*,
　No. 1:18-cv-06859 (N.D. Ill.) .................................................................. 11

*City of Chicago v. Sessions*,
　264 F. Supp. 3d 933 (N.D. Ill. 2017) ...................................................... 10

*City of Chicago v. Sessions*,
　No. 17-2991, 2018 WL 4268817 (7th Cir. June 4, 2018) ........................ 10

*City of New York v. Barr*,
　No. 1:18-cv-06474-ER (S.D.N.Y.) ........................................................... 11

*City of Providence v. Barr*,
　No. CA-18-437-JJM-LDA (D.R.I.) ........................................................... 11

*Duvall v. Atty. Gen. of U.S.*,
　436 F.3d 382 (3d Cir. 2006) ................................................................... 6

*Eringer v. Principality of Monaco*,
　No. CV 10-1803 GAF (EX),
　2011 WL 13134271, (C.D. Cal. Aug. 23, 2011) ..................................... 3

*FCC v. Fox Television Stations, Inc.*,
　556 U.S. 502 (2009) ................................................................................ 10

*Garcia v. United States*,
　469 U.S. 70 (1984) ................................................................................... 5

*Holder v. Hall*,
　512 U.S. 874 (1994) ................................................................................. 5

*Los Angeles v. Barr*,
　No. 2:18-cv-07347-R-JC (C.D. Cal.) ....................................................... 10

*Mayweathers v. Newland,*
  314 F.3d 1062 (9th Cir. 2002) ............................................................... 1, 6, 8

*New York v. United States,*
  505 U.S. 144 (1992) ............................................................................... 1, 6

*Providence Yakima Med. Ctr. v. Sebelius,*
  611 F.3d 1181 (9th Cir. 2010) ................................................................ 1, 9

*South Dakota v. Dole,*
  483 U.S. 203 (1987) ................................................................................ 5, 9

*State of New York v. Barr,*
  No. 1:18-cv-06474 (S.D.N.Y.) ................................................................... 11

*Van Wyhe v. Reisch,*
  581 F.3d 639 (8th Cir. 2009) ........................................................................ 8

**Statutes**

34 U.S.C. § 10102 ............................................................................... 1, 2, 4

34 U.S.C. § 10153 ..................................................................................... 2

5 U.S.C. § 552 ............................................................................................ 3

8 U.S.C. § 1226 ......................................................................................... 6

8 U.S.C. § 1228 ......................................................................................... 6

8 U.S.C. § 1231 ......................................................................................... 6

8 U.S.C. § 1324 ......................................................................................... 5

**Other Authorities**

Marial Alper, Mathew R. Durose, & Joshua Markman, *2018 Update on Prisoner Recidivism: A 9-Year Follow-UP Period (2005-2014)*, Bureau of Justice Statistics (May 23, 2018), https://www.bjs.gov/index.cfm?ty=pbdetail&iid=6266. ........................................ 7

MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY (10th ed. 1998) ................................. 3

## INTRODUCTION

This case asks whether the Department of Justice can require recipients of Byrne JAG funds to refrain from publicly disclosing federal law enforcement information for the purpose of shielding from detection unlawfully present aliens and fugitives. Plaintiff ignores or discounts the statutes and standards that govern its challenge to these requirements. Specifically, Plaintiff discounts Congress' mandate for the Assistant Attorney General of the Office of Justice Programs ("OJP") to "maintain liaison" with state and local governments "in matters relating to criminal justice," 34 U.S.C. § 10102(a)(2), essentially arguing that that authority makes the AAG only a messenger. Plaintiff also ignores both the Supreme Court's instruction that the "relatedness" aspect of the Spending Clause requires only "some relationship" between spending conditions and the purposes of the program involved, *New York v. United States*, 505 U.S. 144, 167 (1992), and the observation that this "low-threshold" inquiry is "a far cry from imposing an exacting standard," *Mayweathers v. Newland,* 314 F.3d 1062, 1067 (9th Cir. 2002). Similarly, Plaintiffs ignores that the "arbitrary and capricious" standard under the Administrative Procedure Act ("APA") is "highly deferential" to the agency. *See Providence Yakima Med. Ctr. v. Sebelius*, 611 F.3d 1181, 1190 (9th Cir. 2010).

Under the statutes and standards that govern here, Plaintiff's challenge to the FY 2018 Byrne JAG Program should be dismissed.[1] The AAG's authority to "maintain liaison" (together

---

[1] As noted in Defendant's opening memorandum (Dkt. No. 44), Defendant recognizes that this Court has previously ruled against certain FY 2017 Byrne JAG conditions that are very similar to the notice, access, and information conditions in the FY 2018 Byrne JAG Program. Defendant also recognizes that the Court has ruled against the constitutionality of 8 U.S.C. § 1373. Defendant rests on his prior arguments regarding those issues, *see City of Chicago v. Sessions*, No. 1:17-cv-05720 (N.D. Ill.), Dkt. Nos. 32, 139, 167, and will not address Plaintiff's arguments on those issues here.

Additionally, Defendant will not address Plaintiff's challenge to the appointment of Matthew Whitaker as Acting Attorney General (*see* Am. Compl., at ¶¶ 189-193) because Plaintiff has now abandoned that claim. *See* Combined Opposition to Defendant's motion to Dismiss and Memorandum in Support of Chicago's Cross-Motion for Partial Summary Judgment (Dkt. No. 50) ("Pl.'s Memo."), at 23-24.

with his other statutory authorities) requires him to facilitate a close bond of cooperation between federal law enforcement and state and local enforcement.  This authority fully supports both the public-disclosure condition and the requirement for Byrne JAG applicants to provide information about its laws and policies on communicating with certain law enforcement authorities.  These requirements, moreover, bear more than "some relationship" to the purposes of the Byrne JAG Program, as the subject requirements and the Program seek to further criminal justice and public safety.  And these requirements are more than reasonable under the APA, especially given the demonstrated need to protect federal law enforcement information to safeguard federal officers, the suspects they encounter, and the general public.

**ARGUMENT**

**I.      The Public-Disclosure Condition is Permissible.**

**A.  This Requirement is Authorized by Statute and Does Not Violate the Separation of Powers.**

Congress authorized the Assistant Attorney General ("AAG") for OJP to "maintain liaison with . . .  State governments in matters relating to criminal justice," 34 U.S.C. § 10102(a)(2), to dictate the "form" of Byrne JAG applications, *id*. § 10153(a), to place "special conditions on all grants" and determine "priority purposes for formula grants," *id*. § 10102(a)(6), and to require compliance with all "applicable Federal laws," id. § 10153(a)(5)(D).  These authorities amply support the public-disclosure condition and the requirement for Byrne JAG applicants to provide information about certain of their laws and policies.

This requirement enables federal, state, and local law enforcement officials to work together effectively and safely, such that they readily fall within the AAG's authority to "maintain liaison."  *Id*. § 10102(a)(2).  Operational security – the confidentiality of law enforcement operations – is essential to such operations.  Thus, for example, the federal Freedom

of Information Act protects the confidentiality of operational law enforcement information.  *See* 5 U.S.C. § 552(b)(7) (exempting "records or information compiled for law enforcement purposes" to the extent disclosure "could reasonably be expected to interfere with enforcement proceedings" or "disclose techniques and procedures for law enforcement investigations or prosecutions").

In arguing to the contrary, the Plaintiff asserts that this authority encompasses only "ministerial responsibilities."  Pl.'s Memo, at 12 (internal quotation marks omitted).  One who "maintains liaison," however, is much more than a mere clerk.  A liaison is defined as "a close bond or connection" or "a person who establishes and maintains communication for mutual understanding and cooperation."  *See Liaison*, MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY (10th ed. 1998).  Thus, the AAG is responsible for maintaining "a close bound or connection" between federal and state criminal justice authorities and for facilitating "mutual understanding and cooperation" among such authorities. In order to work together effectively and safely, the free flow of law enforcement information is essential. This clearly encompasses, at minimum, protecting the confidentiality of federal law enforcement information provided to state and local agencies and assessing the ability of such agencies to engage in law enforcement cooperation by gathering information about their laws and policies.  *Cf. Eringer v. Principality of Monaco*, No. CV 10-1803 GAF (EX), 2011 WL 13134271, at *5 (C.D. Cal. Aug. 23, 2011), *aff'd*, 533 F. App'x 703 (9th Cir. 2013) (stating that plaintiff's contract for "maintaining liaison" between Principality and foreign intelligence agencies entailed "regularly shar[ing] sensitive intelligence information").

One important aspect of the "liaison" duty is to ensure adequate "deconfliction" between federal and state or local law enforcement agencies.  When agencies conduct law enforcement

operations, they must "de-conflict" to protect officer safety and ensure that other agencies do not inadvertently jeopardize their operations. *See, e.g.*, Nationwide Officer Safety Event Deconfliction, National Criminal Intelligence Resource Center, https://www.ncirc.gov/Deconfliction/ (last visited Apr. 7, 2019); Best Practices in Event Deconfliction, Commission on Accreditation for Law Enforcement Agencies, https://www.calea.org/sites/default/files/EventDeconfliction_PoliceFoundation.pdf (last visited Apr. 7, 2019). When agencies operate in isolation, no agency has the complete picture, and the implications for public safety can be dire. Obviously, information-sharing diminishes if agencies fear that recalcitrant jurisdictions will publicly release information shared through these channels for purposes of subverting the law.

Assuming any further authority were needed here, the public-disclosure condition also falls within OJP's authority to place "special conditions on all grants" and to determine "priority purposes for formula grants." 34 U.S.C. § 10102(a)(6). These are "special conditions," and they prioritize certain federal law enforcement funds for States and localities that protect the confidentiality of federal law enforcement information. The Plaintiff argues, citing this Court's holding in the prior case, that Section 10102(a)(6) does not itself confer the authority described, but only refers to any such authority as may be conferred elsewhere. Pl.'s Memo, at 13-15. With respect, however, that argument ignores, among other things, the statement by the House Judiciary Committee that this language does indeed "allow[] the Assistant Attorney General to place special conditions on all grants and to determine priority purposes for formula grants." H.R. Rep. No. 109-233, at 101 (2005) (emphasis added). The Supreme Court has "repeatedly stated that [when resort to legislative history is necessary,] the authoritative source for finding the Legislature's intent lies in the Committee Reports on the bill [in question], which represent

4

the considered and collective understanding of those Congressmen involved in drafting and studying proposed legislation." *Garcia v. United States*, 469 U.S. 70, 76 (1984) (citation omitted); *see Holder v. Hall*, 512 U.S. 874, 932 n. 28 (1994) (Thomas, J., concurring). The Plaintiffs essentially ignores the statutory text and the committee's straightforward statement about the AAG's authority.

Finally, the Plaintiffs argues that most of the statutes cited in the FY 2018 Byrne JAG certification involves statutes that "do not apply to the City." Pl.'s Memo., at 21. But the public-disclosure condition does not seek to require awardees to comply with the federal statutes cited in the certification. For example, the public-disclosure condition does not seek to "apply" the federal smuggling statute, 8 U.S.C. § 1324, to Plaintiff in the sense of subjecting it to possible criminal prosecution for smuggling. Rather, those statutes are cited as background for the grant requirements, to establish the Federal Government's legitimate interests in protecting federal law enforcement information. Even if the Plaintiff cannot be prosecuted for violating a particular federal criminal law, the Department of Justice can legitimately expect it – as a condition of receiving federal law enforcement funds – to refrain from disclosing sensitive federal law enforcement information in an effort to defeat federal enforcement efforts.

### B. This Requirement is Consistent with the Spending Clause.

In relation to the Plaintiff's claims under the Spending Clause, the public-disclosure condition is related to the criminal-justice and public-safety purposes of the Byrne JAG Program and is sufficiently clear to enable potential applicants to "exercise their choice knowingly, cognizant of the consequences of their participation." *South Dakota v. Dole*, 483 U.S. 203, 207 (1987).

### 1. The Requirement is Related to the Purposes of the Byrne JAG Program.

The Plaintiff ignores the governing standard for relatedness under the Spending Clause. The Supreme Court has held that the Constitution requires only "some relationship" between spending conditions and the purposes of the program involved, *New York v. United States*, 505 U.S. 144, 167 (1992), and this "low-threshold" inquiry is "a far cry from imposing an exacting standard," *Mayweathers v. Newland*, 314 F.3d 1062, 1067 (9th Cir. 2002). Plaintiffs also ignore the multiple ways in which criminal law is intertwined with immigration law. Among other things, the term "criminal alien" appears multiple times in the Immigration and Nationality Act ("INA"), and "[a] primary goal of several recent overhauls of the INA has been to ensure and expedite the removal of aliens convicted of serious crimes." 8 U.S.C. §§ 1226(c), 1228(a), 1231(a)(6), 1378; *Duvall v. Atty. Gen. of U.S.*, 436 F.3d 382, 391 (3d Cir. 2006). All of the conditions in these cases relate to efforts to remove aliens apprehended for their involvement in criminal activity. The requirement challenged here ensures that any "program or activity" funded by the Byrne JAG Program does not thwart the Federal Government's exercise of its ability to remove aliens not lawfully present in the United States or removable due to a criminal conviction – thus also serving the purposes of the program.

Contrary to the Plaintiff's argument, the relatedness inquiry does not ask whether the purpose of the Byrne JAG Program "encompass[es] assisting in or cooperating with federal civil immigration enforcement," Pl.'s Memo., at 17, but whether these particular requirements are sufficiently related to the purposes of the Byrne JAG Program. The relationship between criminal justice and the Byrne JAG requirement now at issue is evident from the statute and background law. Importantly, the term "criminal justice" is defined broadly under the Byrne JAG statute. *See* 34 U.S.C. § 10251(a)(1). There, Congress defined it to mean *more* than simply

6

prosecuting individuals for violations of criminal law. Rather, it includes "activities pertaining to crime prevention, control, or reduction" in addition to the mere "enforcement of the criminal law." *Id.* Once removed, a criminal alien has no opportunity to re-offend, which controls, prevents, and reduces crime. This is particularly true given the high recidivism rates, indicating that it is likely that a criminal alien not removed will again engage in future criminal activity. *See* Marial Alper, Mathew R. Durose, & Joshua Markman, *2018 Update on Prisoner Recidivism: A 9-Year Follow-UP Period (2005-2014)*, Bureau of Justice Statistics (May 23, 2018), https://www.bjs.gov/index.cfm?ty=pbdetail&iid=6266. Moreover, ensuring that immigration enforcement efforts are not in conflict with the activities of local criminal law enforcement is an essential component of proper management of dual law enforcement entities. *Cf. California v. Sessions*, 284 F. Supp. 3d 1015, 1033 (N.D. Cal. 2018) (noting that "criminal law impacts the INA in a variety of ways" and that "the relationship the government needs to add conditions to the receipt of grants does not need to be close"). Thus, preventing the disclosure of federal law enforcement information that is shared to ensure the safety and avoid conflicts between the operations of two authorized law enforcement agencies is necessarily related to the criminal-justice purposes of the Byrne JAG Program. The challenged conditions fall squarely within the statutory definition of "criminal justice," even if immigration enforcement itself is considered to be civil in nature.

Moreover, the "federal law enforcement information" to be protected by the public-disclosure condition encompasses any "law enforcement sensitive information communicated or made available, by the federal government, to a State or local government entity," Am. Compl., Ex. D, at ¶ 44(4)(A)(2) (Dkt. No. 34-4) (Chicago's FY 18 Byrne JAG award document), not just information regarding the enforcement of immigration law. Further, the fact that the public-

disclosure condition forecloses grantees from disclosing federal law enforcement information to conceal either unlawfully present aliens or fugitives from criminal justice further shows the requirement's relationship to the purposes of the Byrne JAG Program.  This condition seeks to prevent federal grantees from using federal law enforcement information to defeat federal law enforcement objectives, whether the targets of that enforcement are violating federal immigration law or federal criminal law.

### 2.  The Requirement is Unambiguous.

The challenged requirement also satisfies the governing standards on clarity under the Spending Clause.  The courts hold that "the exact nature of [grant] conditions may be largely indeterminate, provided that the existence of the conditions is clear, such that States have notice that compliance with the conditions is required."  *Charles v. Verhagen*, 348 F.3d 601, 607 (7th Cir. 2003) (citation omitted); *see Benning v. Georgia*, 391 F.3d 1299, 1306 (11th Cir. 2004) ("Once Congress clearly signals its intent to attach . . . conditions . . . it need not specifically identify and proscribe in advance every conceivable state action that would be improper." (citation omitted)); *see also Van Wyhe v. Reisch*, 581 F.3d 639, 650 (8th Cir. 2009) (finding notice requirement satisfied even where condition "provides a pliable standard"); *Mayweathers*, 314 F.3d at 1067 (finding notice requirement satisfied even with a "standard [that] is perhaps unpredictable because it has resulted in different determinations in different courts").

In arguing that the challenged requirement is ambiguous, the Plaintiff appears to require the Department of Justice to "specifically identify and proscribe in advance every conceivable . . . action that would be improper," which the Spending Clause does not require.  *See Benning*, 391 F.3d at 1306.  The challenged requirements are set forth at some length, with definitions and Rules of Construction as needed, which more than satisfies the Spending Clause's standards of

clarity.  *See* Am. Compl., Ex. D, at ¶ 44 (Dkt. No. 34-4) (Chicago's FY 18 Byrne JAG award document).

Nevertheless, the Plaintiff argues that the challenged requirements are unconstitutionally ambiguous because they allegedly cover indeterminate types of sensitive law enforcement information.  Pl.'s Memo, at 17.  The uncertainty cited by the Plaintiff, however, is either not ambiguous at all or is too particular to constitute a constitutional violation.  As is clearly understood by the Plaintiff, the point of this requirement is to prevent state and local authorities from disclosing in advance news of federal law enforcement operations.  This is clearly illustrated by the disclosure by the Mayor of Oakland, California, on Twitter and Facebook of an upcoming operation.  *See* AR 01038-39.  Further, the Rules of Construction clearly define "federal law enforcement information" as "information communicated or made available, by the federal government, to a State or local government entity." *See* Am. Compl., Ex. D, at ¶ 44 (Dkt. No. 34-4) (Chicago's FY 18 Byrne JAG award document).

In any event, the Plaintiff can always ask OJP for clarification on these questions.  The Plaintiff argues that the Department's willingness to answer questions about the grant requirements cannot save them.  *See* Pl.'s Memo., at 17.  But the question under the ambiguity element of the Spending Clause is whether applicants can "exercise their choice knowingly, cognizant of the consequences of their participation."  *Dole*, 483 U.S. at 207.  To the extent an applicant is uncertain about the meaning of a grant requirement, it can seek clarification from the federal agency, which would presumably be bound by any explanation it provides regarding the "consequences" of the requirement, allowing the applicant to act "knowingly."  It is also consistent with the liaison role specifically assigned by Congress.

## II.     The Public-Disclosure Condition is Consistent with the Administrative Procedure Act.

In relation to its claim under the Administrative Procedure Act, the Plainitff fails to explain how the challenged grant requirement can be "arbitrary and capricious" under the APA if it is statutorily authorized and comports with the Spending Clause, as shown above.  In any event, the public-disclosure condition readily satisfies this "highly deferential" standard, *see Providence Yakima Med. Ctr. v. Sebelius*, 611 F.3d 1181, 1190 (9th Cir. 2010), especially in light of the actual disclosure of an impending federal law enforcement operation by an elected official in California.  *See* Admin. Record at AR01038-39.  It is "entirely rational" for OJP to deny federal law enforcement funding to a jurisdiction that publicly discloses sensitive federal law enforcement information in an attempt to shield an alien or fugitive from detection or that refuses to provide information about its laws or policies on communicating with certain federal law enforcement authorities.  *See FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 517 (2009).

In response, the Plaintiff argues that the advanced disclosures of federal law enforcement operations by the mayor of Oakland are insignificant and insufficient to justify a special condition.  Pl.'s Memo., at 19.  But the APA does not require evidence of a large problem of unauthorized disclosures to establish the reasonableness of conditioning federal law enforcement funds on protecting federal law enforcement information.  Even aside from the common-sense nature of such a requirement and the real-world experience of this disclosure, the Plaintiff's laws and policies create a concern that city officials may engage in such disclosures in the future.

## III.     Any Injunction Should Be Limited to the Plaintiff

Lastly, despite the pendency of similar litigation in several jurisdictions throughout the country, the Plaintiff persists in seeking a "nationwide" injunction.  *Los Angeles v. Barr*, No.

10

2:18-cv-07347-R-JC (C.D. Cal.); *Chicago v. Barr*, No. 1:18-cv-06859 (N.D. Ill.); *City of New York v. Barr*, No. 1:18-cv-06474-ER (S.D.N.Y.); *State of New York v. Barr*, No. 1:18-cv-06474 (S.D.N.Y.); *City of Providence v. Barr*, No. CA-18-437-JJM-LDA (D.R.I.). Plaintiff ignores the pendency of similar litigation in other courts and fails to explain how a resulting conflict could be solved if courts in two or more of these actions were to issue contradictory nationwide injunctions. Obviously, the best approach – even aside from the jurisdictional and equitable problems with ordering relief that affects parties not before the court – is to avoid such a conflict by limiting any injunction in each case to the plaintiff. Indeed, the Court in a related case regarding the FY 2017 Byrne JAG conditions initially entered nationwide relief, *City of Chicago v. Sessions*, 264 F. Supp. 3d 933, 951 (N.D. Ill. 2017), but the Court of Appeals, *en banc*, later vacated that aspect of the order. *City of Chicago v. Sessions*, No. 17-2991, 2018 WL 4268817 (7th Cir. June 4, 2018).

## CONCLUSION

Accordingly, for these reasons and for those stated in the Defendant's opening memorandum, the Court should dismiss the Plaintiff's challenges to the public-disclosure condition and the certification requirement in the FY 2018 Byrne JAG Program and deny the Plaintiff's Motion for Summary Judgment on those challenges as well.

Respectfully submitted,

JOSEPH H. HUNT
Assistant Attorney General

JOHN TYLER
Assistant Director

/s/ Daniel D. Mauler
DANIEL D. MAULER
Virginia State Bar No. 73190
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, DC 20001
Tel: (202) 514-8095
Fax: (202) 616-8470
E-mail: dan.mauler@usdoj.gov
*Counsel for Defendants*

12