UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| THE CITY OF CHICAGO,<br><br>                         Plaintiff,<br><br>   v.<br><br>ATTORNEY GENERAL OF THE UNITED STATES,<br><br>                         Defendant. | Civil Action No. 1:18-cv-6859<br><br>Hon. Harry D. Leinenweber |

**REPLY IN SUPPORT OF CHICAGO'S
CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT**

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................................. i

TABLE OF AUTHORITIES ........................................................................................................... ii

INTRODUCTION ........................................................................................................................... 1

ARGUMENT ................................................................................................................................... 2

I. THE FOUR REPEAT CONDITIONS SHOULD AGAIN BE PERMANENTLY ENJOINED ......................................................................................................................... 2

II. THE HARBORING CONDITION SHOULD BE ENJOINED ............................................ 4

    A. The Harboring Condition Is *Ultra Vires* .................................................................. 4

    B. The Harboring Condition Violates The Spending Clause ......................................... 7

    C. The Harboring Condition Violates The APA ............................................................ 9

III. AN ONGOING PROGRAM-WIDE INJUNCTION IS PROPER ...................................... 11

    A. Chicago Is Entitled To Ongoing, Forward-Looking Injunctive Relief .................... 11

    B. Chicago Is Entitled To Program-Wide Relief ......................................................... 12

CONCLUSION ............................................................................................................................. 12

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*City & County of San Francisco v. Sessions*,
  No. 18-cv-5146, 2019 WL 1024404 (N.D. Cal. Mar. 4, 2019) ...................................2, 5

*City of Chicago v. Sessions*,
  321 F. Supp. 3d 855 (N.D. Ill. 2018) .............................................................................2

*City of Chicago v. Sessions*,
  888 F.3d 272 (7th Cir. 2018) ................................................................................ 2, 5, 6

*City of Philadelphia v. Att'y Gen. of the United States*,
  916 F.3d 276 (3d Cir. 2019) ...........................................................................................5

*South Dakota v. Dole*,
  483 U.S. 203 (1987) .......................................................................................................8

*Michigan v. EPA*,
  135 S. Ct. 2699 (2015) .................................................................................................10

*FERC v. Elec. Power Supply Ass'n*,
  136 S. Ct. 760 (2016) ...................................................................................................11

*Gattem v. Gonzales*,
  412 F.3d 758 (7th Cir. 2005) .......................................................................................10

*Judulang v. Holder*,
  565 U.S. 42 (2011) .......................................................................................................10

*MCI WorldCom Network Servs., Inc. v. Atlas Excavating, Inc.*,
  No. 02 C 4394, 2006 WL 3542332 (N.D. Ill. Dec. 6, 2006) .......................................11

*Nat'l Ass'n of Mfrs. v. Dep't of Def.*,
  138 S. Ct. 617 (2018) .....................................................................................................6

*Owner-Operator Indep. Drivers Ass'n, Inc. v. Fed. Motor Carrier Safety Admin.*,
  656 F.3d 580 (7th Cir. 2011) .......................................................................................10

*Pennhurst State Sch. & Hosp. v. Halderman*,
  451 U.S. 1 (1981) ......................................................................................................7, 8

**DOCKETED MATERIALS**

*City of Chicago v. Sessions*, No. 17-cv-5720 (N.D. Ill.) ......................................................3

**STATUTES**

28 U.S.C. § 2412.............................................................................................................................3

34 U.S.C.
    § 10102............................................................................................................................ 1, 4, 5, 6
    § 10152.....................................................................................................................................8
    § 10153...................................................................................................................................6, 7

49 U.S.C. § 46317..........................................................................................................................9

**RULES & LEGISLATIVE MATERIALS**

Fed. R. Civ. P. 54 ..........................................................................................................................3

H.R. Rep. No. 109-233 (2005) ......................................................................................................6

**INTRODUCTION**

The Attorney General fails to defend his illegal attempts to impose immigration policy conditions on the JAG program. In response to Chicago's cross-motion for summary judgment, he:

- offers no defense at all of the four repeat conditions, and effectively concedes that he had no legal basis to impose them in the first place;

- defends his main proposed legal authority for imposing the "harboring condition"—the "maintain liaison" language in 34 U.S.C. § 10102(a)(2)— by copying and pasting chunks from his initial motion to dismiss rather than engaging with either Chicago's arguments or the decisions going against him;

- argues in the alternative that subsection 10102(a)(6) provides the authority to impose the harboring condition, notwithstanding the express holdings of this Court and the Seventh Circuit that subsection 10102(a)(6) provides no independent grant-conditioning authority at all;

- defends the harboring condition's deficiencies under the Spending Clause and APA primarily by trying to rewrite the condition's nearly limitless terms;

- ignores (and thus effectively consents to) Chicago's request for ongoing, forward-looking injunctive relief, which is all the more urgent now that the Attorney General has moved to impose the same illegal conditions on FY2019 JAG grants;

- claims that program-wide relief is unwarranted because of a risk of conflicting decisions, notwithstanding that a dozen federal judges have unanimously declared that the Attorney General's efforts to undermine the JAG program are illegal.

Chicago's motion for summary judgment should be granted, and the Court should order prospective, program-wide relief. Congress designed the JAG formula grant program to support local law enforcement priorities. For years, cities like Chicago have used JAG funding for important

efforts and programs, from new police cars, to community outreach, to innovative ShotSpotter technology to crack down on gun violence. The Attorney General must not be allowed to turn Congress's vision into a vehicle for top-down federal coercion, or to paralyze the program by provoking round after round of litigation. Just as in the FY2017 litigation, the Attorney General's immigration policy conditions on the JAG program are *ultra vires* and unlawful. The motion should be granted.

## ARGUMENT

### I. THE FOUR REPEAT CONDITIONS SHOULD AGAIN BE PERMANENTLY ENJOINED

As described in Chicago's opening brief, the four repeat conditions—the FY2018 notice and access conditions, the FY2018 Section 1373 compliance condition, and the Section 1644 compliance condition—are identical to FY2017 conditions that were already held unlawful and *ultra vires* by this Court and (in the case of the notice and access conditions) by the Seventh Circuit. Chicago SJ Br. 5, 8-9; *see City of Chicago v. Sessions*, 888 F.3d 272, 277, 283-284 (7th Cir. 2018) (notice and access conditions unlawful); *City of Chicago v. Sessions*, 321 F. Supp. 3d 855, 872-874 (N.D. Ill. 2018) (notice, access, and Section 1373 compliance condition unlawful); *see also City & County of San Francisco v. Sessions*, No. 18-cv-5146, 2019 WL 1024404, at *1, *4 (N.D. Cal. Mar. 4, 2019) (FY2018 and FY2017 conditions are "essentially the same"). The Attorney General does not contest the point, nor does he argue that anything has changed since this Court's August 2018 summary judgment ruling in the FY2017 JAG litigation (and indeed, nothing has, except that many more judges have agreed that the challenged conditions are illegal, *see* Chicago SJ Br. 4-5 (collecting cases)). Rather, the Attorney General's *only* response is a footnote resting on his arguments from the briefing in the FY2017 litigation—*i.e.*, arguments that this Court already rejected in granting judgment for Chicago in that case. DOJ SJ Opp. 1 n.1.

Here too, summary judgment should be granted on the repeat conditions. Indeed, the Attorney General's failure to offer any new legal basis for imposing the repeat conditions strongly confirms that Chicago is entitled to attorney's fees associated with the litigation of this action under 28 U.S.C. § 2412, just as this Court contemplated during the remedy phase of the FY2017 litigation when it said that Chicago's "lawyers would get paid" if the City was forced to file yet another lawsuit. *See* Aug. 15, 2018 Tr. 6:4-15, *City of Chicago v. Sessions*, No. 17-cv-5720 (N.D. Ill.); *accord id.* at 3:24-4:11. For the avoidance of any doubt, Chicago intends to file a petition for fees at the proper time, as prescribed in Fed. R. Civ. P. 54(d)(2).[1]

The Attorney General's inability to defend the repeat conditions also confirms that, as discussed further below (*infra* Part III) and in Chicago's opening brief, an injunction covering all future grant years should now issue. The Attorney General still has not heeded the message of this Court's original ruling: Just last month, after Chicago's cross-motion was filed, the Justice Department released the JAG state solicitation for *FY2019* that *again* contains the exact same conditions Chicago has been forced to litigate in FY2017 and FY2018. *See* JAG Program Fiscal Year 2019 State Solicitation, at 25-26, https://www.bja.gov/funding/JAGState19.pdf. Chicago should not need to file a new lawsuit every year to beat back the same illegal grant conditions over and over and over again.[2]

---

[1]  While having to litigate over the repeat conditions most obviously merits a fee award, the harboring condition, which the Attorney General has imposed based on the same legal grounds already rejected in the FY2017 JAG litigation, *see infra* 4-7; *see also* Chicago SJ Br. 12-13, equally satisfies the requirement for a fee award.

[2]  In this reply brief in support of Chicago's cross-motion for summary judgment, the City focuses solely on those arguments raised in its cross-motion, namely that the repeat conditions and the harboring condition are unlawful and should be enjoined on a program-wide, ongoing basis. Chicago has already responded in the City's prior brief to the additional issues, such as the Attorney General's motion to dismiss arguments regarding Chicago's standing to challenge the "additional certification condition" and the ripeness of Chicago's request for declaratory relief. *See* Chicago SJ Br. 20-24. Notably, the Attorney General appears to have abandoned those arguments by failing to address Chicago's arguments in his reply.

## II. THE HARBORING CONDITION SHOULD BE ENJOINED

In response to Chicago's arguments that the harboring condition can be enjoined on any of three grounds—it is *ultra vires*, it violates the Spending Clause, and it is arbitrary and capricious in violation of the APA—the Attorney General largely rehashes the arguments he made in his initial motion to dismiss. The only conclusion to draw from this failure is that the Attorney General has no response to speak of.

### A. The Harboring Condition Is *Ultra Vires*

The harboring condition is *ultra vires* because nothing in the JAG statute or any other statute allows the Attorney General to impose it on the highly circumscribed JAG formula grant program. The sources of purported authority that the Attorney General points to are all insufficient: They are foreclosed by either the holding or the reasoning of the prior decisions of this Court and the Seventh Circuit, and even setting aside those precedents, they fail as a matter of plain text and congressional purpose. Summary judgment should be granted on this ground alone.

The first purported source of authority for the harboring condition that the Attorney General identifies is 34 U.S.C. § 10102(a)(2), a provision outside the JAG statute that directs the Assistant Attorney General for the Office of Justice Programs (the "AAG") to "maintain liaison with the executive and judicial branches of the Federal and State governments in matters relating to criminal justice." DOJ SJ Opp. 2-4. The Attorney General's claim is that, because "maintaining liaison" contemplates information sharing between federal and local governments, and because some information that might be shared might be confidential, the AAG's general duty to facilitate information-sharing under subsection 10102(a)(2) provides the AAG with sweeping power to withhold JAG funds from cities like Chicago unless they promise to refrain from "disclosing" (*i.e.*, discussing in any fashion) "federal information" (*i.e.*, any information of any type derived from any federal source). As Chicago explained in its cross-motion, however, this argument butchers the

statutory text, contravenes the core purpose of the JAG program and the JAG statute's precise funding formula, and flies in the face of the reasoning of this Court and other courts, which have already concluded that even those duties listed in parts of Section 10102 that, unlike subsection 10102(a)(2), *actually mention the word "grants,"* still do not give the AAG any power to undercut Congress's design for the JAG program. Chicago SJ Br. 11-13.

The Attorney General responds to the cross-motion not by offering new arguments on subsection 10102(a)(2), but by copying and pasting, almost literally word-for-word, the text of his opening motion-to-dismiss brief. *Compare* DOJ SJ Opp. 3-4 *with* DOJ MTD 1 *and* 11-12. He does not acknowledge that at least one other court has already rejected his "maintain liaison" argument. *See* Chicago SJ Br. 12 (citing *City & County of San Francisco v. Sessions*, 2019 WL 1024404, at *8-9). He does not acknowledge that both the Third Circuit and the Seventh Circuit have characterized the function of Section 10102 very differently. *See* Chicago SJ Br. 12-13 (citing *City of Chicago v. Sessions*, 888 F.3d at 284, 285 (subsection 10102(a)(2) is part of AAG's "communication and coordination duties") and *City of Philadelphia v. Att'y Gen. of the United States*, 916 F.3d 276, 288 (3d Cir. 2019) (subsection 10102(a)(2) involves a "ministerial" duty to "disseminate criminal justice information and coordinate with various agencies")). And he does not acknowledge that his reading of subsection 10102(a)(2), which again does not even mention grantmaking, cannot be squared with the Seventh Circuit's clear holding that "[t]he ability of the Attorney General to depart from the distribution mandated by the [JAG funding] formula is strictly circumscribed." *City of Chicago*, 888 F.3d at 286; *see also* Chicago SJ Br. 12-13. And notably, while the Attorney General continues to assert that the AAG's information-sharing duties somehow implicate "deconfliction" between federal and local law enforcement operations, DOJ SJ Opp. 3-4, he also never responds to Chicago's argument that the harboring condition sweeps far beyond the narrow purposes of deconfliction, or for that matter that the AAG for the Office of Justice Programs does not even handle deconfliction

protocols for active law enforcement operations in the first place, Chicago SJ Br. 13 n.6.  Chicago's arguments stand entirely unrefuted.

The Attorney General's remaining arguments are also deeply flawed.  He cites 34 U.S.C. § 10102(a)(6), which this Court and the Seventh Circuit have expressly held does not convey any independent authority to impose grant conditions at all.  *E.g.*, *City of Chicago*, 888 F.3d at 284.  Here, the Attorney General at least marshals a new argument, claiming that binding Seventh Circuit precedent and this Court's own decisions should be ignored in favor of a 15-year-old piece of legislative history that he never even cited during the FY2017 litigation.  DOJ SJ Opp. 4.  But where the meaning of the statutory text is clear on its face (as the Seventh Circuit has already held it is here with respect to subsection 10102(a)(6)), the "inquiry … ends there," without any need to resort to legislative history at all.  *Nat'l Ass'n of Mfrs. v. Dep't of Def.*, 138 S. Ct. 617, 631 (2018); *see also, e.g.*, *City of Chicago v. Sessions*, 888 F.3d 272, 285 (7th Cir. 2018) (rejecting Attorney General's interpretation of § 10102(a)(6) based on "plain meaning").  And in any event, the legislative history here says nothing to support the Attorney General's position; it just reflects the statutory language that the Seventh Circuit has definitively interpreted.  *Compare* H.R. Rep. No. 109-233, at 101 (2005) (subsection 10102(a)(6) "allows the [AAG] to place special conditions on all grants and to determine priority purposes for formula grants") *with* 34 U.S.C. § 10102(a)(6) (AAG shall "exercise such other powers and functions as may be vested in the [AAG] pursuant to this chapter or by delegation of the Attorney General, including placing special conditions on all grants, and determining priority purposes for formula grants").

The Attorney General's third purported source of authority for the harboring condition is 34 U.S.C. § 10153(a).  He cites two parts of that subsection, *see* DOJ SJ Opp. 2, but neither gives him the power to impose broad-based restrictions on JAG funding like the harboring condition.  Subsection 10153(a) states that the JAG application must be "in such form as the Attorney General

may require," but the Attorney General offers no argument (literally, none) for how this provision allows him to impose substantive grant conditions. Nor could he, as the term "form" (as opposed to, say, "substance") refers to the procedural requirements for completing an application for JAG funding, and nothing more. Meanwhile, subsection § 10153(a)(5)(D) (with which this Court is familiar) allows the AAG to require compliance with "applicable Federal laws." But the Attorney General freely admits that the harboring condition "does not seek to require awardees to comply with the federal statutes cited in the certification," DOJ SJ Opp. 5, and he does not suggest that the harboring condition seeks compliance with any other purportedly applicable Federal law. There is simply no legal basis for the harboring condition, and it can be enjoined for that reason alone.

**B.     The Harboring Condition Violates The Spending Clause**

The harboring condition can also be enjoined because it violates the requirements of the Spending Clause, namely that conditions on federal funding be both unambiguous and germane to the purposes for which spending has been authorized. Chicago SJ Br. 16.

1. Ambiguity

As Chicago explained in its opening brief, the harboring condition is so broad on its face as to prohibit the City from sharing any information derived from any federal source whatsoever. Chicago SJ Br. 17. The Attorney General's responses merely confirm this defect. He asserts that "the point of [the harboring condition] is to prevent state and local authorities from disclosing in advance news of federal law enforcement operations," DOJ SJ Opp. 9, but whether or not that is its intended purpose, that is not what the condition *says*. The harboring condition refers generally to all "law enforcement information," a term that the condition itself defines as including far more than active operations. Chicago SJ Br. 16 (citing SUMF ¶ 38). Indeed, even the explanation the Attorney General offers in his brief is hopelessly vague on the precise questions that matter most to Chicago's "knowing acceptance" (or rejection) of the conditions. *Pennhurst State Sch. & Hosp. v. Halderman*, 451

U.S. 1, 17 (1981). If Chicago learns of ICE raids at schools or courthouses, does the condition prevent Chicago officials from speaking out against such controversial tactics? Chicago raised that specific concern in its cross-motion, Chicago SJ Br. 17, yet the Attorney General responds only with deafening silence.

The Attorney General does not help his argument by claiming that any ambiguity may be resolved by "seek[ing] clarification from the federal agency, which would presumably be bound by any explanation it provides." DOJ SJ Opp. 9. The Attorney General cites no law for the proposition that an agency's willingness to explain an otherwise ambiguous condition on request can somehow cure a Spending Clause violation, nor does he explain the basis on which an agency would be bound by any such informal explanation. More fundamentally, the Spending Clause requires the Attorney General to clarify himself before Chicago decides whether to accept the conditions. Yet, even when faced with active litigation and a motion for summary judgment, he still has not disavowed the near limitless reach of the harboring condition as it is actually written, and continues to hide the ball regarding the harboring condition's true scope. In these circumstances, Chicago cannot take JAG funds "knowingly, cognizant of the consequences of [its] participation." *South Dakota v. Dole*, 483 U.S. 203, 207 (1987) (quoting *Pennhurst*, 451 U.S. at 17).

    2. <u>Germaneness</u>

The Attorney General does not dispute that the purpose of the JAG program is "to provide additional personnel, equipment, supplies, contractual support, training, technical assistance, and information systems *for criminal justice*," 34 U.S.C. § 10152 (emphasis added), nor does he identify anything in the JAG statute that directly addresses enforcement of *civil* immigration laws. He points to the JAG statute's definition of "criminal justice," and argues that immigration enforcement actions are "activities pertaining to crime prevention, control, or reduction" because "[o]nce removed, a criminal alien has no opportunity to re-offend, which controls, prevents, and reduces

crime." DOJ SJ Opp. 7. But even accepting the assumptions implicit in that statement (that the federal government would successfully remove the hypothetical "criminal alien," and that this hypothetical person would not then re-enter the United States), the harboring condition by its own terms is not limited to criminal aliens. It applies to any public disclosure of "federal law enforcement information" that is made in a direct or indirect attempt to shield *any* alien from enforcement of civil immigration laws.[3] The administration's federal *civil* immigration enforcement priorities are not germane to a grant program whose exclusive purpose is supporting local efforts to fight *crime*, and cannot be foisted onto that program without violating the Spending Clause.

### C. The Harboring Condition Violates The APA

Finally, the harboring condition can be enjoined because it violates the APA. The Attorney General abandons his argument that the imposition of the FY2018 conditions does not constitute final agency action, and argues on the merits that the harboring condition is "rational" because it makes sense to "deny federal law enforcement funding to a jurisdiction that publicly discloses sensitive federal law enforcement information in an attempt to shield an alien or fugitive from detection." DOJ SJ Opp. 10. Setting aside the fact that this is not self-evidently rational at all (it seems likely that denying law enforcement funding will make it *harder* for a jurisdiction to apprehend criminals), the Attorney General again misstates what the harboring condition actually says. The harboring condition is hardly limited to disclosures of only "sensitive federal information" that are meant to "shield an alien or fugitive from detection." Rather it applies to an expansive category of information—any "records or information compiled for any law enforcement purpose"—that if

---

[3] Under the Attorney General's view, any grant condition on JAG funds would be germane so long as the condition involves an area of law that in turn intersects in some way with the criminal code. This reading renders absurd results. For example, the Attorney General could lawfully condition JAG funds on the agreement to allow the FAA to set up private flight training facilities, because it is a federal crime to fly an airplane without a license, *see* 49 U.S.C. § 46317, and pilot training and licensure accordingly "controls, prevents, and reduces crime."

disclosed might even "indirect[ly]" have the effect of shielding aliens from federal detection. The Attorney General's perceived need to rewrite the harboring condition to try to make it seem more "rational" is telling.

And in any case, the question is not whether the Attorney General can now come up with a post-hoc argument for why the harboring condition is "rational." The question under the APA is whether the imposition of the harboring condition "was the product of 'reasoned decisionmaking.'" *Owner-Operator Indep. Drivers Ass'n, Inc. v. Fed. Motor Carrier Safety Admin.*, 656 F.3d 580, 588 (7th Cir. 2011). Again, "[t]he Justice Department's lawyers are not allowed to supply the agency's missing rationale in its brief." *Gattem v. Gonzales*, 412 F.3d 758, 768 (7th Cir. 2005). A printout of a tweet—which is the only thing in the administrative record that purportedly sets forth the theory behind the harboring condition—does not satisfy the basic requirements of the APA.

The Attorney General argues that the "advance[] [sic] disclosures of federal law enforcement operations by the Mayor of Oakland" that are referenced in the tweet provide a rationale for the harboring condition, and notes that "the APA does not require evidence of a large problem." DOJ SJ Opp. 10. Although the decision to impose nationwide eligibility conditions on hundreds of millions of dollars in crucial law enforcement funding based on this one incident may itself be irrational, that is not even the point. The administrative record does not articulate any link between the Oakland Mayor's actions and the Department's decision to impose the harboring condition, let alone how the Department determined that this condition was an appropriate response. To serve the fundamental goals of transparency and accountability, the APA requires that the Executive Branch explain itself when it sets policy. *Judulang v. Holder*, 565 U.S. 42, 45 (2011). That is why even agency actions that would otherwise be permissible (unlike this one) are still set aside when an agency fails to properly explain the basis for its action. *See, e.g.*, *Michigan v. EPA*, 135 S. Ct. 2699, 2711 (2015) (EPA unreasonably failed to consider costs when deciding to promulgate regulations);

*Judulang*, 565 U.S. at 45 ("[P]rovid[ing] a reasoned explanation …. is not a high bar, but it is an unwavering one. Here, the [agency] has failed to meet it."); *see also FERC v. Elec. Power Supply Ass'n*, 136 S. Ct. 760, 784 (2016) ("Our important but limited role is to ensure that the Commission engaged in reasoned decisionmaking—that it weighed competing views, selected a compensation formula with adequate support in the record, and intelligibly explained the reasons for making that choice.").

## III. AN ONGOING PROGRAM-WIDE INJUNCTION IS PROPER

Not only should the challenged conditions be enjoined, but they should be enjoined on an ongoing, forward-looking, program-wide basis. When it fashioned relief in the FY2017 litigation, this Court gave the Attorney General a chance to voluntarily stop his unlawful tampering with the JAG program. Evidently, stronger medicine is required to protect a critical source of local law enforcement funding for state and local governments.

### A. Chicago Is Entitled To Ongoing, Forward-Looking Injunctive Relief

The Attorney General makes no attempt to rebut Chicago's argument that it is entitled to injunctive relief extending to future grant years and not just FY2018. He thereby concedes that Chicago's request for relief is proper. *See, e.g.*, *MCI WorldCom Network Servs., Inc. v. Atlas Excavating, Inc.*, No. 02 C 4394, 2006 WL 3542332, at *3 (N.D. Ill. Dec. 6, 2006) ("The general rule in the Seventh Circuit is that a party's failure to respond to an opposing party's argument implies concession."). Beyond that omission, the Attorney General's actions speak loudest of all: Just within the last month, he has moved—yet again—to impose the same illegal conditions on the FY2019 JAG state grants. Without forward-looking relief, Chicago and other jurisdictions across the country will be forced to incur unnecessary legal costs—and the courts will need to expend precious judicial resources—to again halt the very same grant conditions that federal courts have unanimously declared to be unlawful for two years running.

## B. Chicago Is Entitled To Program-Wide Relief

Relief here should be program-wide as well. The Attorney General gestures vaguely to supposed "jurisdictional and equitable" issues with "nationwide" injunctions, DOJ SJ Opp. 11, but does not actually take on Chicago's analysis for why program-wide injunctive relief is a permissible remedy for an unlawful, program-wide agency action like his imposition of the illegal JAG grant conditions here. Rather, the only argument the Attorney General actually articulates is that relief should be limited to Chicago alone because there may be "contradictory nationwide injunctions" if this Court were to issue program-wide relief. DOJ SJ Opp. 11. As an initial matter, that argument is nonsensical; if there was ever a merits ruling in the federal government's favor, it would not result in any injunction at all (let alone a "nationwide" one). And that is in any case a colossal "if," because every court to address the Attorney General's JAG program conditions—a dozen federal judges and counting—has ruled them unlawful.

In the end, opposing program-wide relief here is nothing more than a way for the Attorney General to force cities and states to acquiesce to his illegal conditions. He seeks to mandate jurisdiction-by-jurisdiction relief knowing that some jurisdictions will capitulate and sacrifice their sovereign rights because they cannot spend significant time and money to litigate against the federal government but also cannot forgo critical JAG funding that is necessary to support their police forces. Program-wide relief is again required to prevent that inequitable result, to ensure that grant applicants are subject to uniform standards, and protect the JAG program's intended purpose of supporting locally-driven law enforcement priorities

## CONCLUSION

Chicago's cross-motion for partial summary judgment should be granted.

Respectfully submitted,

May 31, 2019

<table>
<tr><td>

JAMIE S. GORELICK (*pro hac vice*)
DAVID W. OGDEN (*pro hac vice*)
ARI HOLTZBLATT (*pro hac vice*)
ARI SAVITZKY (*pro hac vice*)
JUSTIN BAXENBERG (*pro hac vice*)
MOLLY JENNINGS (*pro hac vice*)
ARI EVANS (*pro hac vice*)
WILMER CUTLER PICKERING HALE
   AND DORR LLP
1875 Pennsylvania Avenue NW
Washington, DC 20006
(202) 663-6000

DEBO P. ADEGBILE (*pro hac vice*)
WILMER CUTLER PICKERING HALE
   AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
(212) 230-8800

</td><td>

MARK A. FLESSNER
Acting Corporation Counsel
  of the City of Chicago

By  /s/ Andrew W. Worseck
ANDREW W. WORSECK
Chief Assistant Corporation Counsel
JUSTIN A. HOUPPERT
SCOTT D. SPEARS
Assistant Corporation Counsel
30 N. LaSalle Street, Suite 1230
Chicago, IL 60602
(312) 744-7129

RONALD S. SAFER
MATTHEW C. CROWL
NICK KAHLON
TAL CHAIKEN
RILEY SAFER HOLMES & CANCILA LLP
Three First National Plaza
70 West Madison Street, Suite 2900
Chicago, IL 60602
(312) 471-8700

*Attorneys for the City of Chicago*

</td></tr>
</table>