UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

**THE CITY OF CHICAGO**,

*Plaintiff*,

*v.*

**WILLIAM P. BARR**, in his official capacity as Attorney General of the United States,

*Defendant*.

Civil Action No. 1:18-cv-06859

Hon. Harry D. Leinenweber

**DEFENDANT'S OPPOSITION TO
PLAINTIFF'S MOTION FOR ATTORNEY FEES**

JOSEPH H. HUNT
Assistant Attorney General

JOHN R. LAUSCH, JR.
United States Attorney

BRIGHAM J. BOWEN
Assistant Director
Federal Programs Branch

*/s/ Charles E.T. Roberts*
Charles E.T. Roberts (PA Bar No. 326539)
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, DC 20530
Phone: (202) 305-8628
Fax: (202) 616-8470
E-Mail: charles.e.roberts@usdoj.gov

*Counsel for Defendant*

**TABLE OF CONTENTS**

BACKGROUND.................................................................................................................2

ARGUMENT ...................................................................................................................4

I.     The Court should not award any fees until final judgment has been entered.............................4

II.    Chicago is not entitled to any award under the EAJA § 2412(b)..................................5

    A.    Chicago's allegations fail to include any litigation conduct, as would be required for a bad-faith fee award....................................................................7

    B.    Even if subsection (b) were applicable, the Government's conduct surrounding the FY 2017 and 2018 conditions was not in bad faith..........................10

    C.    There is no requisite "causal connection" between the conduct Chicago complains of and either the merits award or fees on fees that it seeks. ......................14

III.   If the Court makes an award, the Motion's deficiencies warrant sharp reductions. ...............16

    A.    Chicago seeks fees calculated at unreasonable rates........................................16

    B.    Chicago's petition shows that this case was overstaffed....................................17

    C.    Chicago seeks to recover for unreasonable hours and time entries. ...........................18

    D.    Chicago's fees-on-fees request is unreasonable and disproportionate. .......................20

CONCLUSION...............................................................................................................20

Defendant opposes Chicago's Motion for $508,501.25 in fees under the Equal Access to Justice Act (EAJA). Dkt. No. 99 (*hereinafter*, "Mot."). That statute does not authorize an award every time the Government loses on a claim in litigation. *See* 28 U.S.C. § 2412. Instead, the EAJA permits a court to award reasonable fees to the "prevailing party" only "to the same extent that any other party would be liable under the common law." *Id.* § 2412(b). Because it is ineligible under the typical statutory hook, *see id.* § 2412(d), Chicago seeks to shoehorn its fee-shifting petition into a narrow exception to the American Rule against fee-shifting by inappropriately invoking the Court's inherent powers to punish Defendant's alleged bad-faith or vexatious conduct[1] (which formed the basis of the city's claims in this case) to justify recovering the city's entire tab at full-freight rates. Its misguided approach would end-run subsection (d)'s eligibility and rate limitations, while transmogrifying § 2412(b) into a punitive, general fee-shifting statute. But bad faith is not a backstop for plaintiffs to use whenever they fail to qualify under subsection (d).

To begin with, any fee award would be premature until this Court has entered a final judgment following the ongoing appeal. Additionally, Chicago is not entitled to any award for three reasons: its allegations include only non-litigation conduct, which cannot justify a bad-faith award; the city provides no evidence of subjective bad faith even in that non-litigation conduct; and there is no "causal connection" between that non-litigation conduct and the fees incurred because the city would have litigated the new Fiscal Year ("FY") 2018 conditions anyway. *Goodyear Tire & Rubber Co. v. Haeger*, 137 S. Ct. 1178, 1186–87 (2017) (requiring such a connection because of a bad-faith award's compensatory, not punitive, nature). If an award is made, it should be reduced substantially for four more reasons: unreasonable billing rates, overstaffing, unreasonable time entries, and unreasonable or disproportionate time for "fees on fees." *See* Exhibit A, attached. In short, the Court should wait until the merits appeal is fully resolved before deciding the fee Motion; deny the Motion entirely; or, alternatively, limit any fee award significantly.

---

[1] Neither the city nor the case law clearly distinguishes between bad-faith and vexatious conduct, so they are used interchangeably in this brief.

## BACKGROUND

This case focused on whether the Office of Justice Programs ("OJP") at the Department of Justice ("DOJ") can require Byrne JAG funds recipients to comply with two new conditions for FY 2018 awards. While this case also involved challenges to four conditions functionally the same as those this Court previously considered in the FY 2017 case Chicago brought,[2] the Government did not relitigate those issues in this Court, enforce those conditions in Chicago's FY 2018 award, or seek to impose litigation costs on the city by reasserting those conditions. As this Court has stated, Defendant simply "preserv[ed]" his right to enforce the conditions in FY 2018 if this Court's injunction were lifted by the ongoing appeal. *Chicago v. Barr*, 405 F. Supp. 3d 748, 762 (N.D. Ill. 2019).

While the FY 2017 case continued toward summary judgment, the OJP began the grant process for FY 2018. In that process, the OJP sought to include six conditions on awards. The harboring condition and additional certification requirement were entirely "new" to FY 2018. Mot. 6. Three more conditions—the notice, access, and § 1373 compliance conditions—were functionally the same as those in FY 2017. And a sixth—the § 1644 compliance condition—merely added a second statutory reference to the § 1373 compliance condition. Five days after this Court's permanent injunction regarding the FY 2017 conditions, the OJP offered Chicago its award for that year. *See* Dkt. No. 44-1, at 32 (Aug. 20, 2018). That same week, on the deadline to apply, Chicago submitted its FY 2018 application. *See* Dkt. No. 34-9 (Aug. 22, 2018 deadline); Exhibit D (Aug. 22, 2018 date of submission). The Government noticed its appeal of the FY 2017 permanent injunction the following week. Then, on the same day the city accepted its FY 2017 award, Chicago filed this suit challenging aspects of the FY 2018 program. Dkt. No. 1 (Oct. 12, 2018). Meanwhile, the OJP continued to consider Chicago's FY 2018 application alongside dozens of

---

[2] Chicago actually previously acceded to the § 1373 compliance condition. The OJP first included the condition in FY 2016 Byrne JAG solicitations, during the prior administration. *See New York v. Dep't of Justice*, 951 F.3d 84, 98–100 (2d Cir. 2020). Chicago accepted its award and submitted its validation pursuant thereto that year. *See* Exhibit B at ¶ 52 (acceptance); Exhibit C (validation).

others and proactively announced that, given this Court's FY 2017 rulings, none of the above conditions, aside from the new harboring condition, would be enforced against Chicago. *See* Dkt. No. 44-1, at 90. Thus, about three months after applying on the last possible day to do so—and on or before the date when almost 40 other FY 2018 awards were made[3]—Chicago was offered its award. *See id.* at 60 (Nov. 20, 2018).

The FY 2018 case continued, with the city arguing that the six conditions were unlawful for various reasons. *See* Am. Compl., Dkt. No. 34. The Government focused this litigation, however, on the two new conditions by conceding the FY 2017 conditions were controlled by this Court's prior decision, *see* Def.'s Mot. of Partial Dismissal, Dkt. No. 44, at 1–2; *see also* Def.'s Reply, Dkt. No. 61, at 1 n.1—thereby merely preserving its rights pending resolution of the ongoing appeal. The Court granted summary judgment on Chicago's counts contending that the conditions are *ultra vires*, and granted summary judgment on Chicago's claim that § 1373 and § 1644 are facially unconstitutional. *Chicago*, 405 F. Supp. 3d at 771. The Court dismissed three of the city's other counts as moot, and dismissed with prejudice a moot count challenging the appointment of Matthew Whitaker as Acting Attorney General. After conferral on a claim seeking declaratory judgment regarding 8 U.S.C. § 1324, Chicago agreed to dismiss that count without prejudice, and the Court entered judgment, issuing a nationwide, permanent injunction (though staying its nationwide effect pending the Seventh Circuit's decision in the FY 2017 case). *Id.* at 762. Before the Government's deadline to appeal the FY 2018 decision, Chicago began the process to seek an award by disclosing time and work records pursuant to Local Rule 54.3. The Government appealed in November 2019, Dkt. No. 87, and the city filed its fee Motion in March 2020.

The next month, the Seventh Circuit affirmed the permanent injunctions in both cases, holding that the challenged conditions lack statutory authority. *Chicago v. Barr*, 957 F.3d 772, 820 (7th Cir. 2020).

---

[3] *See* OJP Award Data, https://www.ojp.gov/funding/explore/ojp-award-data (follow "OJP Grant Awards search page;" then select "State/Territory;" then select "Award Date;" then select date range November 20, 2018 to January 10, 2020; then select BJA under "Program Office;" then select All under "State/Territory;" then click "Submit").

The court did not pass on the constitutionality of §§ 1373 and 1644. *Id.* Senior Judge Manion dissented regarding the injunction's scope. *Id.* at 821. In June, the panel issued a revised opinion and judgment. *Chicago v. Barr*, 2020 WL 3037242 (7th Cir. June 4, 2020). Thus, the Government has until July 20, 2020 to file any petition for rehearing and until November 2, 2020 to file any petition for a writ of certiorari.

## ARGUMENT

### I.     The Court should not award any fees until final judgment has been entered.

As a threshold matter, any fee award would be premature until Chicago has a final judgment that secures it "prevailing party" status. 28 U.S.C. § 2412(b). Although, in this Circuit, "[w]hether fees can be sought before entry of a final judgment is actually an unresolved question," "the drift in the other circuits is against the suggestion." *Richmond v. Chater*, 94 F.3d 263, 266 (7th Cir. 1996) (citing cases). Conservation of judicial and party resources further warrants refraining from litigating or deciding any award until this case's appeal has been fully resolved (at least partially in the city's favor). If it is resolved against Chicago, no award would be appropriate and any award this Court has made would need to be clawed back. If the appeal is partially resolved against Chicago, further briefing or settlement negotiations on the matter would be both necessary and prudent. And however the appeal is resolved, the parties and the Court would likely benefit from addressing a single, complete fee petition, rather than piecemeal records. There is a clear circuit split over this case's issues, *compare New York v. Dep't of Justice*, 951 F.3d 84, 90 (2d Cir. 2020), *with Chicago*, 2020 WL 3037242, at *19, which further counsels in favor of waiting to see how this case's appeal resolves. *Cf. In re TCI Ltd.*, 769 F.2d 441, 447 (7th Cir. 1985) (courts should "be careful not to undercut the orderly development of the law" with an award of fees). In short, at this time, the Court may find Chicago is *not* entitled to any EAJA award; otherwise, the EAJA's "prevailing party" party requirement, the weight of circuit court authority addressing the issue, judicial economy, and judicial comity all counsel in favor of awaiting the appeal's final results before any fee award.

## II.     Chicago is not entitled to any award under the EAJA § 2412(b).

This Court's "basic point of reference when considering the award of attorney's fees is the bedrock principle known as the 'American Rule': Each litigant pays his own attorney's fees, win or lose, unless a statute or contract provides otherwise." *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 252–253 (2010). The EAJA provides for an award of attorney's fees against the United States in certain limited circumstances, most commonly[] under subsection (d). That subsection is a "fee-shifting statute[]," *Comm'r, INS v. Jean*, 496 U.S. 154, 161 (1990), that allows an eligible, prevailing party to obtain fees and expenses unless the Government's position was "substantially justified" or "special circumstances make an award unjust." 28 U.S.C. § 2412(d)(1)(A). Such "a fee award presumptively encompasses all aspects of the civil action," *Jean*, 496 U.S. at 161, and fee award rates are capped "unless the court determines that an increase in the cost of living or a special factor . . . justifies a higher fee." 28 U.S.C. § 2412(d)(2)(A). However, subsection (d) excludes "any . . . unit of local government" with a net worth exceeding "$7,000,000 at the time the civil action was filed" and requires that an eligible entity have fewer "than 500 employees at the time the civil action was filed." *Id.* § 2412(d)(2)(B)(ii).

Chicago clearly could not claim fees under subsection (d);[4] so it has opted to try shoehorning into subsection (b) its bid to shift essentially all of its fees. Subsection (b) codifies an even more limited, common-law exception to the American Rule: for bad faith, vexatious, wanton, or otherwise oppressive conduct, pursuant to courts' inherent power to control litigation conduct. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 45–46 (1991). Still, though, even if a court identifies "litigation abuse" permitting a fee award, "the court can shift only those attorney's fees incurred *because of* the misconduct at issue." *Goodyear*, 137 S.

---

[4]     *See* City of Chicago, *2018 Budget Overview* 33–34 (2018), https://www.chicago.gov/content/dam/city/depts/obm/supp_info/2018Budget/2018_Budget_Overview.pdf (indicating Chicago's annual budget of over $8 billion and full-time equivalent employees totaling over 34,000 in 2017 and 2018).

Ct. at 1186 (requiring a "but-for," "causal connection").[5] Therefore, a bad-faith fee award "must be compensatory rather than punitive"—and is not a remedy for the conduct underlying the cause of action. *Id.*; *see Chambers*, 501 U.S. at 53. In other words, a bad-faith award cannot be based solely on "the events giving rise to the litigation." *Zapata Hermanos Sucesores, S.A. v. Hearthside Baking Co., Inc.*, 313 F.3d 385, 391 (7th Cir. 2002); *accord Rodriguez v. United States*, 542 F.3d 704, 712 (9th Cir. 2008). This is because § 2412(b) is *not* a fee-shifting provision. Instead, a bad-faith award "serve[s] the same purpose as a remedial fine imposed for civil contempt, and vindicate[s] the court's authority over a recalcitrant litigant," thereby compensating a party for the costs incurred because of another party's bad-faith *litigation* conduct. *Hutto v. Finney*, 437 U.S. 678, 678 (1978); *see Chambers*, 501 U.S. at 53–54.

Additionally, a court must "exercise caution . . . both in determining that the requisite bad faith exists and in assessing fees." *Chambers*, 501 U.S. at 50. The Seventh Circuit also has emphasized that courts must interpret the bad-faith exception "strictly." *Gaffney v. Riverboat Servs. of Ind., Inc.*, 451 F.3d 424, 467 (7th Cir. 2006); *see Satoskar v. Ind. Real Estate Comm'n*, 517 F.2d 696, 698 (7th Cir. 1975) ("The standards for bad faith are necessarily stringent."); *see also Zapata*, 313 F.3d at 390–91 ("The inherent authority of federal courts to punish misconduct before them is not a grant of authority to do good, rectify shortcomings of the common law . . . or undermine the American rule on the award of attorneys' fees to the prevailing party in the absence of statute."). Moreover, the EAJA "amounts to a partial waiver of sovereign immunity [and] must be strictly construed in favor of the United States." *Ardestani v. INS*, 502 U.S. 129, 137 (1991).

Chicago's Motion does not mention *Goodyear* or *Chambers*, let alone their but-for test for bad-faith fee awards. Instead, the city cites pre- and non-litigation conduct and out-of-circuit precedent contrary to *Zapata* in a bid to shift all of its fees and avoid the EAJA's rate cap, seeking a fundamentally punitive rather

---

[5] Notably, this requirement means that courts can almost never award fees for an entire litigation, unless "literally everything the defendant did—'his entire course of conduct' through, and indeed preceding, the litigation—was 'part of a sordid scheme' to defeat a valid claim." *Goodyear*, 137 S. Ct. at 1188 (quoting *Chambers*, 501 U.S. at 51). Chicago makes no such allegation here.

than compensatory award. That is not the law. *Goodyear*, 137 S. Ct. at 1186; *Chambers*, 501 U.S. at 54.

If the Court decides the Motion at this time, it should deny any award for three reasons. First, Chicago's allegations of bad faith do not include any litigation conduct, as required for a fee award pursuant to a court's inherent, common-law powers in this Circuit. Second, even the conduct the city identifies falls far short of demonstrating subjective bad faith. And third, even if the Government's conduct were in bad faith, Chicago still would have filed this lawsuit to challenge the *new* FY 2018 conditions, work on which the city essentially acknowledges should not be compensated. That Chicago would have litigated anyway forecloses the causal connection between alleged misconduct and resulting attorney's fees that the Supreme Court requires. Similar reasoning likewise forecloses awarding any fees on fees.

### A. Chicago's allegations fail to include any litigation conduct, as would be required for a bad-faith fee award.

The Seventh Circuit has established the simple but fundamental principle that the bad-faith exception extends only to conduct "occurring in the litigation itself, not in the events giving rise to the litigation." *Zapata*, 313 F.3d at 391; *see Flextronics Int'l, USA, Inc. v. Sparkling Drink Sys. Innovation Ctr. Ltd.*, 230 F. Supp. 3d 896, 907 (N.D. Ill. 2017); *Grochocinski v. Mayer Brown Rowe & Maw LLP*, 452 B.R. 676, 683 (N.D. Ill. 2011) ("[T]he phrase 'the events giving rise to the litigation' in this context means the underlying conduct that sparked the litigation."), *aff'd*, 719 F.3d 785 (7th Cir. 2013). Thus, the *Zapata* court overturned a bad-faith fee award that was intended to punish the conduct—breaching a contract—that sparked the litigation. *See* 313 F.3d at 391.

The Supreme Court's most recent decision on the bad-faith exception similarly defines courts' inherent powers to control only the conduct before the courts. *See Goodyear*, 137 S. Ct. at 1186 (limiting a bad-faith fee award to only "the legal bills that *the litigation abuse* occasioned" (emphasis added)); *see also Lu v. United States*, 921 F.3d 850, 861–62 (9th Cir. 2019) (applying *Goodyear* framework to § 2412(b) case). This follows logically from those powers' necessity only to preserve the court's authority. *See Roadway Express, Inc. v. Piper*, 447 U.S. 752, 764 (1980). The *Zapata* court's view of the bad-faith exception also echoes that

— 7 —

of four Justices in *Chambers*, which held that courts may award fees for bad faith in the conduct of litigation, but did not explicitly resolve whether courts may award fees for bad-faith conduct relating to the underlying cause of action. *See* 501 U.S. at 54 n.16. *But see id.* at 53 (implicitly answering that question with: "the imposition of sanctions under the bad-faith exception depends . . . on how the parties conduct themselves *during the litigation*" (emphasis added)). The four *Chambers* dissenters, however, squarely addressed the issue, pointedly asserting that "it is impermissible to allow a District Court acting pursuant to its inherent authority to sanction such prelitigation primary conduct. A court's inherent authority extends only to remedy abuses of the judicial . . . process." *Id.* at 74 (Kennedy, J., dissenting); *see also id.* at 59–60 (Scalia, J., dissenting) (explaining that such limitation prevents "erosion or evasion of the American Rule").

Here, the city relies overwhelmingly on prelitigation conduct to justify its fee demand—conduct that this Court's inherent authority does not reach. *See Zapata*, 313 F.3d at 391. Chicago focuses its accusations on the decision to reassert the FY 2017 conditions. *See, e.g.*, Mot. 10 (discussing "decision to reimpose the unlawful repeat conditions . . . ."); *id.* at 12 (discussing "reimposing the FY2018 conditions"). The only misconduct from after this case began that the city identifies also occurred outside the litigation: an alleged delay in issuing its FY 2018 award letter. *See* Mot. 11–12. Chicago nowhere identifies conduct *in the litigation* (*i.e.*, "litigation abuse," *Goodyear*, 137 S. Ct. at 1186) that could justify a finding of bad faith. Nor could it: there was no needless delay of litigation or harassment, no defiance of a court order, no unethical or otherwise inappropriate attorney conduct. On the contrary, the Government simply stood on its prior arguments to defend the FY 2017 conditions for preservation purposes, while litigating issues of first impression and the scope of relief to (still-pending) conclusion.

As *Zapata* makes clear, only conduct "occurring in the litigation itself" can form the basis for a bad-faith fee award. *See* 313 F.3d at 391. And as Chicago must concede, the assertion of the conditions is "the underlying conduct that sparked [this] litigation." *Grochocinski*, 452 B.R. at 683; *see* Mot. 1. A court's inherent authority simply does not reach this type of conduct because a party's "behavior in the litigation

itself . . . is the only lawful domain of the relevant concept of 'inherent authority.'" *Zapata*, 313 F.3d at 391. Rather than confront *Zapata*, Chicago cites two other Seventh Circuit cases for the proposition that the bad-faith exception applies to "conduct giving rise to the law suit." Mot. 9 (citing *Mach v. Will Cty. Sheriff*, 580 F.3d 495 (7th Cir. 2009); *Stive v. United States*, 366 F.3d 520 (7th Cir. 2004)). However, *Mach*'s lip-service to a broader conception of bad faith is not only contrary to other Seventh Circuit authority, it was mere dictum: the bad-faith conduct in that case occurred *in the litigation*. *See* 580 F.3d at 502. *Stive* (which predates *Zapata*) similarly rejected allegations of bad faith regarding only litigation conduct, while stressing that a "defendant normally has a right to defend, rather than having to keel over just because a suit has been filed against him." 366 F.3d at 522. Thus, neither case disturbed *Zapata*'s holding that the bad-faith exception does not reach non-litigation conduct or its reasoning so limiting courts' inherent powers, *see Tucker v. Williams*, 682 F.3d 654, 662 (7th Cir. 2012) (citing *Zapata* approvingly)[6]—let alone the Supreme Court's strong suggestions of the same. An award of fees under the bad-faith exception is therefore barred by Circuit precedent. *Accord Lu*, 921 F.3d at 861 (confirming that "a district court must identify the conduct that abused the judicial process" and apply *Goodyear*'s but-for standard to identify resulting fees).

Given the Seventh Circuit's heavily circumscribed view of the bad-faith exception, it is unsurprising that Chicago cobbles together primarily out-of-circuit authority that seems to the contrary. *See* Mot. 9–10. But those cases are irrelevant in light of *Zapata*. Moreover, *Goodyear* has confirmed the Seventh Circuit's approach, requiring a tight causal nexus between bad-faith litigation conduct and fees

---

[6] Moreover, neither case is analogous here, where the Government merely preserved its arguments about the FY 2017 conditions while litigating the new conditions in good faith. *See Mach*, 580 F.2d at 502 (Mach had "no reason for maintaining [certain arguments] through summary judgment."); *Stive*, 366 F.3d at 522 (targeting "utterly frivolous defenses," as in "tax-protester cases," in dicta, without addressing prelitigation conduct). Chicago's Motion does not allege that the defense here was in bad faith; it only targets the conduct underlying its claim, which § 2412(b) cannot reach. Neither can the defense—unanimously upheld by another circuit court and still the subject of an ongoing appeal from this Court—reasonably be considered frivolous.

incurred. *See* 137 S. Ct. at 1187.[7]  Again, the primary conduct that Chicago identifies—the reassertion of certain conditions—occurred prior to filing this suit.  And the alleged misconduct after the suit was filed was not litigation conduct either, but rather the timing of the OJP's consideration of Chicago's FY 2018 grant application.  Therefore, the city's substantive fee-shifting bid invites this Court to reach beyond the "lawful domain" of its inherent authority, and should be rejected.  *Zapata*, 313 F.3d at 391.

Additionally, Chicago's Motion fails to cite *Goodyear* or *Chambers*, let alone to invoke the narrow window those cases left open for shifting an entire case's fees when a litigant's "entire course of conduct . . . evidenced bad faith and an attempt to perpetrate a fraud on the court."  501 U.S. at 51; *see* 137 S. Ct. 1187–88.  Having forfeited such an argument, the city's bid for fees covering this entire litigation boils down to a baseless attempt to evade subsection (d)'s eligibility requirements and rate cap via subsection (b).

> **B.     Even if subsection (b) were applicable, the Government's conduct surrounding the FY 2017 and 2018 conditions was not in bad faith.**

To award fees under the bad-faith exception, a court must find that the accused party acted "without at least a colorable basis in law—what in a malicious prosecution case would be called 'probable cause.'"  *Analytica, Inc. v. NPD Research, Inc.*, 708 F.2d 1263, 1269–70 (7th Cir. 1983); *see also Rainsberger v. Benner*, 913 F.3d 640, 649 (7th Cir. 2019) ("Probable cause is a low bar.").  And even without a colorable basis, a court must still find that the party "acted in subjective bad faith" for the exception's "stringent" standard to be satisfied.  *Badillo v. Cent. Steel & Wire Co.*, 717 F.2d 1160, 1165 (7th Cir. 1983).  In other words, even "a finding of meritlessness will not support a finding of bad faith in and of itself."  *McCandless v. Great Atl. & Pac. Tea Co.*, 697 F.2d 198, 201 (7th Cir. 1983).  Only where the lack of merit is "so great . . .

---

[7] Courts have noted that the D.C. Circuit, where the city primarily draws authority, is one that "liberally construe[s] the sanctioning authority to reach virtually any form of 'bad faith' conduct, freely including that which predates the litigation."  *N. Star Alaska Hous. Corp. v. United States*, 85 Fed. Cl. 241, 246, *aff'd*, 356 F. App'x 415 (Fed. Cir. 2009).  The Seventh Circuit, on the other hand, is one that "more narrowly constru[es] the sanctioning authority, conclud[ing] that fee shifting can never be based upon 'bad faith' conduct that solely predates the litigation."  *Id.* (citing *Zapata*, 313 F.3d at 391).

as to suggest that the suit *must* have been brought to harass rather than to win" does the Seventh Circuit allow an argument's merit to drive a bad-faith fee award. *Coyne-Delany Co. v. Capital Dev. Bd. of State of Ill.*, 717 F.2d 385, 390 (7th Cir. 1983) (emphasis added).[8]

Chicago's allegations of bad-faith conduct cannot clear these substantial hurdles. The city targets only: (i) the reassertion of the FY 2017 conditions, (ii) the assertion of the new FY 2018 conditions, and (iii) an alleged delay in processing its FY 2018 application. None provides a basis for an award.

i. FY 2017 Conditions: Chicago's allegations focus almost exclusively on the alleged meritlessness of the three FY 2017 conditions' reassertion.

First, the conditions' lawfulness was not settled at this case's outset (nor is it still); nor were the Government's defenses meritless. *See New York*, 951 F.3d at 90–91 (unanimously upholding FY 2017 conditions' statutory authorization and constitutionality). The Government was entitled to preserve its ability to enforce the FY 2017 conditions in subsequent years should a higher court find any of them lawful. Because each grant works like a contract, the OJP must include the text of challenged conditions each year, even if an injunction is in place barring a condition's enforcement, because the Government does not have the luxury of prevailing on appeal and then later inserting conditions into previously-issued awards. Under those circumstances, the text of the condition would appear in the OJP's nationwide solicitation and each

---

[8] Chicago makes much of a brief exchange between Government counsel and the Court at the hearing on the FY 2017 permanent injunction, implying either that the Government conceded or the Court pre-committed to awarding § 2412(b) fees if the FY 2017 conditions were imposed again. *See* Mot. 1, 5, 12. The city is mistaken. The Government acknowledged "there might be other remedies available to the plaintiffs in that context," which says nothing of fees, let alone fees premised on bad faith occurring in or outside the litigation. Transcript, *City of Chicago*, No. 17-cv-05720 (N.D. Ill. Aug. 20, 2018), Dkt. No. 213 at 6. The Court's response, "[t]hat would mean their lawyers would get paid," *id.*, similarly did not pre-commit to finding bad faith or awarding fees under § 2412(b). The Court may not have understood at the time that Chicago is ineligible for fees under § 2412(d) or that prelitigation conduct alone cannot justify a bad-faith award; or it may have envisioned some form of punitive sanctions. But § 2412(b) cannot justify the city's current Motion to shift all this case's fees based on non-litigation conduct. *See supra* Part II.A.

applicable grant, but DOJ would refrain from enforcing the relevant condition.[9] This is not a case of a party attempting to relitigate settled legal rights and obligations. Rather, the Government focused its briefing on the new conditions that had not yet been judicially scrutinized and the scope of relief (an issue that prompted a dissent and then *sua sponte* reconsideration on appeal). This Court should "be careful not to undercut the orderly development of the law" with an award of fees. *In re TCI Ltd.*, 769 F.2d at 447; *see also Adams v. Carlson*, 521 F.2d 168, 170 (7th Cir. 1975) (declining to award fees pursuant to the bad-faith exception where "the defendants as public servants were engaged in good faith litigation to the end of hammering out the [law's] extent"). "Vigorous litigation in an area in which the law is so unsettled should not be equated with obduracy, wantonness, vexatiousness, or oppression." *Adams*, 521 F.2d at 170.

Second, even if it were meritless, reasserting the FY 2017 conditions was not done to "harass rather than to win." *Coyne-Delany Co.*, 717 F.2d at 390. Instead, the Government's reassertion of the conditions was, in this Court's own words, to "preserv[e] [its] arguments on the repeat conditions" pending further judicial review. *Chicago*, 405 F. Supp. 3d at 762; *see also* Chi.'s Statement of Undisputed Material Facts, Dkt. No. 51, at ¶ 37 (acknowledging that DOJ announced it would not "use or enforce" the challenged conditions unless circumstances changed to permit it to). Preserving issues in this manner does not constitute bad faith. *See, e.g.*, *Knollwood Cemetery Ass'n v. Utd. Steelworkers of Am., AFL-CIO-CLC*, 789 F.2d 367, 369–70 (6th Cir. 1986) (rejecting bad-faith award because defendant "arguably had some authority for seeking independent judicial review"). On the contrary, the Government's swift compliance with the Court's FY 2017 order, the fact that it made no attempt to upend or delay that ruling aside from its appeal as of right, its early acknowledgment of that ruling in this case, and the accompanying decision

---

[9] Indeed, the Government never sought to reconsider or stay this Court's FY 2017 decision pending appeal, which meant that grant money was disbursed to Chicago. Nevertheless, the Seventh Circuit had only affirmed a preliminary injunction, based on a likelihood of success, as to the notice and access conditions, not § 1373, *Chicago v. Sessions*, 888 F.3d 272, 284 (7th Cir. 2018), leaving uncertainty in the law over most (if not all) the FY 2018 conditions' lawfulness at this case's outset.

not to relitigate the merits of those conditions by merely preserving those arguments pending appeal all counsel strongly against any finding of bad faith.

ii. FY 2018 Conditions: Chicago half-heartedly extends these arguments to the new FY 2018 conditions. *See* Mot. 12–14; *see also id.* at 16 n.4 (claiming to specify some attorney time spent on one of the FY 2018 conditions, presumably in case such time is excluded). For even clearer reasons, asserting the new conditions was not meritless; it was untested in any court. The Government invoked authority other than that focused on in the FY 2017 litigation to justify those conditions. *E.g.*, Dkt. No. 44, at 22 n.8; Dkt. No. 61, at 2. And a unanimous circuit court has both agreed that that authority justified the FY 2017 conditions and remanded for that holding to translate to the FY 2018 conditions. *New York*, 951 F.3d at 124. Moreover, the city again identifies nothing other than alleged meritlessness—and nothing from the litigation itself—to suggest either that the conditions' assertion or defense was to "harass rather than to win." *Coyne-Delany Co.*, 717 F.2d at 390. Such accusations fall far short of the bad-faith litigation conduct required to permit a fee award under § 2412(b).

iii. Timing of FY 2018 Award: Chicago also suggests that the time between its application and FY 2018 award indicates bad faith. *See* Mot. 11–12. The city first points to the timing of other jurisdictions' awards to suggest that the OJP targeted Chicago for delay. But Chicago's award issued on November 20, 2018: the same day as or before almost 40 other jurisdictions received their awards (totaling over $20 million),[10] just six weeks after the first awards began to issue, and just three months after it applied on the last possible day to do so. The city also suggests this Court's injunction against the FY 2017 conditions made this timing issue "problematic." Mot. 11. But Chicago's FY 2017 award issued just five days after the Court's injunction, which the city concedes only covered the FY 2017 award. At bottom, the OJP was

---

[10] Over 90 awards, totaling over $27 million, issued in just the week before Chicago's as well. *See supra* Note 3 (select date range November 12, 2018 to November 19, 2018).

not obligated to expedite the city's FY 2018 award and the fact that other awards issued sooner does not show any delay, let alone one resulting from subjective bad faith.[11]

### C. There is no requisite "causal connection" between the conduct Chicago complains of and either the merits award or fees on fees that it seeks.

Even if the Court extends § 2412(b) to cover non-litigation conduct and finds conduct amounting to bad faith, Chicago's claim still lacks the required "causal connection" between any such conduct and the fees it seeks. *Goodyear*, 137 S. Ct. 1187. The compensatory nature of a bad-faith award requires it to cover only "the legal bills that the litigation abuse occasioned." *Id.* at 1186. In other words, such an award may not include "fees that would have been incurred without the misconduct." *Chambers*, 501 U.S. at 54; *accord Lu*, 921 F.3d at 861–62 (vacating a bad-faith award that lacked "but-for" causal connection). (i) Here, this requirement bars any award, because Chicago would have sued to challenge the new FY 2018 conditions in any event. (ii) And the requirement bars any award for fees on fees, because litigating such fees is not a direct cost of any misconduct the city alleges.

i. FY 2018 Conditions: This case's focus on the new FY 2018 conditions breaks the causal link between reasserting the FY 2017 conditions and the city's fees in this case, because Chicago would have litigated the new conditions and scope of relief regardless of the FY 2017 conditions (or alleged delay in issuing the FY 2018 award). The city all but acknowledges that work on at least one of the two new conditions is non-compensable by purporting to identify the time entries spent only on the harboring condition, in case the Court should decide to exclude such time. *See* Mot. 16 n.4; *see also id.* at 6 (discussing "two new conditions"); *id.* at 12–14 (discussing FY 2018 separately). This distinction and exclusion make sense for both new conditions, which were issues of first impression. *See supra* Part II.B.ii.

---

[11] The applicability of other Rules would present a further bar to invoking this Court's inherent powers. *Zapata*, 313 F.3d at 391 (requiring conduct "not adequately dealt with by other rules" to justify a bad-faith fee award); *see Chambers*, 501 U.S. at 50 ("[T]he court ordinarily should rely on the Rules rather than the inherent power."). Thus, an award premised on alleged violations of a court order would be improper because the Rules should have been invoked to enforce that order instead.

As the billing records show, though, it is impossible to distinguish between work on the two years' conditions. *Compare* Holtzblatt Decl., Ex. 2, Dkt. No. 99-3, at 1 (marking "Research potential arguments related to FY 2018 conditions" entry as pertaining to the harboring condition), *with id.* (not marking other "Research potential arguments related to FY 2018 conditions" entry as pertaining to the harboring condition).[12] And it defies belief that Chicago's counsel spent only ten percent of its requested time in this case on the primary issue of first impression. *See id.* (identifying only 75.9 hours as "HARBC"). Exhibit A compiles the many more time entries that either necessarily include work on the new conditions or prevent the Court from determining whether they include such work (because of block-billing) as "Additional HARBC." *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983) (fee applicant "should maintain billing time records in a manner that will enable a reviewing court to identify distinct claims"). The Government's decision to rest on its FY 2017 arguments required minimal effort by the city's counsel to rest on theirs. Therefore, the costs "based on those [repeat condition] claims are unclear, and seemingly negligible." *Priddle v. Malanis*, 2017 WL 2080328, at *4 (N.D. Ill. May 15, 2017). And the fees for work on the new conditions, mooted or abandoned claims, and FY 2019 conditions were not the but-for result of reasserting the FY 2017 conditions; thus, that new work is non-compensable.[13]

ii. Fees on Fees: For similar reasons, any award under the Court's inherent powers may not include Chicago's fees on fees. Even if the Court determines that the city is entitled to fees stemming from each alleged (non-litigation) misconduct, litigating the issue of fees is not a "direct" cost of that misconduct. *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 406 (1990) (rejecting the "line of reasoning . . . that expenses

---

[12] Additionally, although the city purports to have excluded all time relating to its mooted "challenge to the appointment of Mr. Whitaker as Acting Attorney General," Holtzblatt Decl. ¶ 24, its time records provide no reasonable basis for parsing hours spent on filings that included this claim—or the city's abandoned claim for declaratory judgment regarding 8 U.S.C. § 1324, *see Chicago*, 2020 WL 3037242, at *5 n.2, which it does not even purport to exclude.

[13] *Goodyear* does not permit an award based on a "temporal" approach either—*i.e.*, awarding fees simply because they accrued during or following bad-faith conduct. 137 S. Ct. at 1189.

incurred 'because of' a baseless filing extend indefinitely"); *see Goodyear*, 137 S. Ct. at 1186–87. In other words, a fees-on-fees award would require its own distinct finding of bad faith *in litigating the issue of fees* to be justified.[14] *See, e.g.*, *Blixseth v. Yellowstone Mountain Club, LLC*, 854 F.3d 626, 630 (9th Cir. 2017). Chicago has not made any such allegation, so its bid for almost $85,000 in fees on fees is a nonstarter. Exhibit A compiles this work as "Fees on Fees."

## III.     If the Court makes an award, the Motion's deficiencies warrant sharp reductions.

If Chicago's petition is not denied outright, any award still must be reasonable, *Hensley*, 461 U.S. at 433, and accord with the rule that waivers of sovereign immunity (like the EAJA) "must be strictly construed in favor of the United States," *Ardestani*, 502 U.S. at 137. The fee applicant bears the burden of proving the fees are reasonable. *Hensley*, 461 U.S. at 434. Four trends in Chicago's records require substantially reducing any award: (A) unreasonable billing rates, (B) unreasonable staffing levels, (C) unreasonable time entries, and (D) unreasonable or disproportionate fees on fees.

### A.     Chicago seeks fees calculated at unreasonable rates.

The party seeking fees bears the burden of "produc[ing] satisfactory evidence—*in addition to the attorney's own affidavits*—that the requested rates are in line with those prevailing in the community.'" *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984)) (emphasis added). Based on *Blum*, the Seventh Circuit has rejected proposed rates when supported only by an attorney's own affidavit. *E.g.*, *Uphoff v. Elegant Bath, Ltd.*, 176 F.3d 399, 408–09 (7th Cir. 1999). In such circumstances, courts have discretion to reduce any award to a reasonable rate based on awards in similar litigation. *Id.* at 409.

Here, Chicago has provided only self-serving affidavits in support of its proposed rates. *See generally*

---

[14] Chicago claims Defendant did not object in the Joint Statement to its eligibility for fees on fees. *See* Mot. 16 n.5. But the Government did object to "*any* fees under 28 U.S.C. § 2412(b) of EAJA . . . because no factual predicate justifies a fee award." Dkt. No. 99-1 at 3, ¶ 2 (emphasis added). There is no factual predicate—or even allegation—to justify the award of fees on fees here.

Holtzblatt Decl.;[15] Crowl Decl., Dkt. No. 99-5. Therefore, it has failed to meet its burden, *Blum*, 465 U.S. at 895 n.11,[16] and the proposed rates should be reduced. *See, e.g.*, *Uphoff*, 176 F.3d at 409 (finding 40 percent reduction proper where attorneys provided only self-serving affidavits); *E.Z. by Braun v. United States*, 2020 WL 757890, at *3 (N.D. Ill. Feb. 14, 2020) (same). The city acknowledges that its "attorneys spent less time litigating . . . than the attorneys . . . did in the similar case of *City of Evanston*." Mot. 16. Yet Chicago seeks roughly three times the fees sought in *City of Evanston* and over five times the fees awarded. *See* U.S. Conf. of Mayors Mot., No. 1:18-cv-4853, Dkt. No. 100, at 14; 2020 WL 1954142, at *1 (N.D. Ill. Apr. 23, 2020); *see also* Mot. 15. This fact underscores the windfall and end-run around § 2412(d)'s eligibility and rate cap that the city seeks via § 2412(b). Given Chicago's failure to justify its proposed rates and that similar case, the Court should reduce the city's rates significantly, at least to a level comparable with those billed by attorneys in *City of Evanston*, *see* Joint Statement, Dkt. No. 99-1, at ¶ 4; Haussmann Decl., No. 1:18-cv-4853, Dkt. No. 100-3, at 2–4, if not to the level awarded in that case, *see* 2020 WL 1954142, at *5.

### B. Chicago's petition shows that this case was overstaffed.

Because law firms tend to overstaff cases, courts must "scrutinize fee petitions for duplicative billing when multiple lawyers seek fees." *Schlacher v. Law Offices of Phillip J. Rotche & Assocs., P.C.*, 574 F.3d 852, 858 (7th Cir. 2009); *see Jardien v. Winston Network, Inc.*, 888 F.2d 1151, 1160 (7th Cir. 1989). Overstaffing is fact-specific, often depending on the case's complexity and length. *See Stragapede v. City of Evanston*, 215 F.Supp.3d 708, 711–12 (N.D. Ill. 2016) (collecting cases).

Here, Chicago seeks time for 13 attorneys and 3 paralegals across 2 firms—including 4 partners, 2 counsel, 2 senior associates, and 5 associates. Mot. 18–19. Yet the city also claims this case was controlled

---

[15] This affidavit also fails to even address, let alone justify, the paralegal rates sought.

[16] Chicago's invocation of "work related to a Department of Justice investigation into the Chicago Police Department conducted in 2016 and 2017," Mot. 20, is supported only by its own affidavit and also inapt. Internally investigating and defending one of the city's departments from a federal investigation is not the same as initiating a suit as a plaintiff.

by the FY 2017 decision in virtually every respect, *see* Mot. 9–14, meaning it was not complex. Indeed, many of the pleadings simply track FY 2017 filings, with straightforward extensions of arguments for the two new conditions. *See, e.g.*, Dkt. Nos. 1, 34, 50, 64. Moreover, the "similar case" of *City of Evanston*, Mot. 16, which had more complex issues involving associational standing, only involved 3 partners, 3 associates, and 2 paralegals. *See* Haussmann Decl. at 2–4. Here, a single partner and associate—Mr. Holtzblatt and Ms. Jennings—could have sufficed. These circumstances warrant the exclusion of all time billed by other attorneys who played smaller roles, or a significant blanket reduction. *See, e.g.*, *Hensley v. Nw. Permanente P.C. Ret. Plan & Tr.*, 1999 WL 1271576, at **12–13 (D. Or. Dec. 6, 1999) ("While a firm may decide to involve multiple partners in an issue, the government is only required to pay for one."); *In re Eckert*, 414 B.R. 404, 412 (Bankr. N.D. Ill. 2009) ("A team larger than a football squad was not needed to [handle] this case.").

### C. Chicago seeks to recover for unreasonable hours and time entries.

Courts should "exclude hours that are 'excessive, redundant or otherwise unnecessary'" (*i.e.*, unreasonable). *Small v. Richard Wolf Med. Instruments Corp.*, 264 F.3d 702, 708 (7th Cir. 2001) (quoting *Hensley*, 461 U.S. at 434). Several classes of hours and entries that Chicago seeks are unreasonable:

<u>First</u>, the hours for straightforward work are excessive. *See Hannon v. Unum Life Ins. Co. of Am.*, 2014 WL 4653058, at *3 (S.D. Ind. Aug. 6, 2014); *see also E.Z. by Braun*, 2020 WL 757890, at *3 (request for over $100,000 "grossly inflated" given short, repetitive filings). This includes 131.6 hours spent on the Complaint and Amended Complaint, which are similar to the FY 2017 complaint, 44.2 hours spent on a motion that was never filed for a preliminary injunction, 13.3 hours on "attorney appearance forms," and 9 hours spent on a simple motion to reassign. Each should be excluded or significantly reduced. *See, e.g.*, *Sharpe Holdings, Inc. v. HHS*, 2015 WL 3773426, at **4-5 (E.D. Mo. June 17, 2015) (reducing hours billed for complaint very similar to earlier-filed case's); *Osterweil v. Bartlett*, 92 F. Supp. 3d 14, 34–35 (N.D.N.Y. 2015) (finding "no justification" for necessity of work reasserting arguments plaintiff had already developed); *Trs. of Chi. Plastering Inst. Pension Tr. v. Cork Plastering, Inc.*, 2008 WL 728897, at *5 (N.D. Ill.

Mar. 18, 2008) (refusing award for unfiled motion). Exhibit A compiles these entries as "Excessive."

Second, Chicago requests redundant time: hours for appearances, meetings, or phone calls for which more than one attorney billed time. *See Samirah v. Lynch*, 2015 WL 3524790, at *4 (striking "fees incurred for multiple attorneys to attend the same meeting"); *Chi. Messenger Serv. v. Nextel Commc'ns, Inc.*, 2005 WL 643270, at *3 (N.D. Ill. Mar. 16, 2005) (billing for two lawyers at depositions and status hearings unreasonable); *In re Midway Airlines, Inc.*, 1991 WL 277767, at *5 (Bankr. N.D. Ill. Dec. 17, 1991) ("[A]ttorneys conferencing among themselves in their offices constitutes duplicate services and consequently is unreasonable and unnecessary."). All of this time should be excluded or at least reduced to one attorney's time per event. Exhibit A compiles these entries as "Redundant."

Third, "the court should disallow . . . hours expended by counsel on tasks that are easily delegable to non-professional assistance." *Spegon v. Catholic Bishop of Chi.*, 175 F.3d 544, 553 (7th Cir. 1999). Here, Chicago requests hours that include tasks like: filing documents with the Court, phone calls with Court staff regarding "filing issues" and scheduling, meetings and calls regarding scheduling, and attorney time for cite-checking and proofreading. *See Missouri v. Jenkins by Agyei*, 491 U.S. 274, 288 n.10 (1989) (cite-checking drafts is delegable); *Spegon*, 175 F.3d at 553 (calls with court's minute clerk are delegable); *Nolan v. Los Angeles*, 2014 WL 12564127, at *6 (C.D. Cal. Feb. 10, 2014) (filing or serving documents and scheduling are clerical). Exhibit A compiles these entries as "Non-legal."

Fourth, courts should also disallow hours "not directly related to the instant litigation." *Samirah*, 2015 WL 3524790, at *4. Here, Chicago seeks to recover for work on the city's FY 2017 and 2019 Byrne JAG applications and litigation, which were not incurred "in [this] civil action," 8 U.S.C. § 2412(b), as well as coordination with amici, which is unrecoverable. *See, e.g.*, *Melkonyan v. Sullivan*, 501 U.S. 89, 94 (1991) (explaining that 5 U.S.C. § 504(a), which is not applicable here, "is the only part of the EAJA that allows fees and expenses for administrative proceedings" outside the civil action); *Glassroth v. Moore*, 347 F.3d 916,

918–19 (11th Cir. 2003) (refusing fees "for work done in connection with supporting amicus briefs").[17] Exhibit A compiles these entries as "Unnecessary."

Fifth, courts routinely disallow entries that are too vague to verify their reasonableness. *E.g.*, *H.J. Inc. v. Flygt Corp.*, 925 F.2d 257, 260 (8th Cir. 1991) (finding "legal research," "trial prep," and "met w/ client" inadequate); *In re Meese*, 907 F.2d 1192, 1204 (D.C. Cir. 1990) (requiring "the subject matter of a meeting, telephone conference or the work performed during hours billed"). Here, Chicago seeks compensation for entries that fail to meet this bar, like "Prepare for internal team meeting" and "Communications with City." Exhibit A compiles these entries as "Vague."

### D. Chicago's fees-on-fees request is unreasonable and disproportionate.

Courts typically award nowhere near 100 hours in fees on fees. *See Ozinga v. HHS*, 2018 WL 2320933, at *9 (N.D. Ill. May 22, 2018) (citing cases and finding a request for 106.6 hours excessive). Proportionality to the amount of merits fees awarded is one important factor in determining a request's reasonableness. *See Ustrak v. Fairman*, 851 F.2d 983, 987–88 (7th Cir. 1988) (fifteen minutes of "fees on fees" work for every hour of merits work unreasonable). Here, Chicago seeks over 123 hours' of fees on fees. *See* Ex. A; Mot. 16 n.5. That amounts to approximately twelve minutes on fees for every hour litigating the merits (totaling 629.2, *see* Mot. 15). "This is the tail wagging the dog, with a vengeance." *Ustrak*, 851 F.2d at 987; *see Gibson v. Chicago*, 873 F. Supp. 2d 975, 992 (N.D. Ill. 2012). Such an excessive request must be reduced to align with other awards in this District and Circuit, if not denied outright.[18]

### CONCLUSION

For the forgoing reasons, the Court should await the final results of this case's appeal or deny the fee Motion. In the alternative, any award should be reduced significantly.

---

[17] Entries regarding appellate issues should be excluded from any award as well. *E.g.*, Crowl Decl., Ex. 1, at 3 ("Preparing [FRAP] 26.1 Disclosures . . . ."); *see Cooter & Gell*, 496 U.S. at 406.

[18] Complete or partial denial of the city's merits fees request would require further, commensurate reductions in any fees-on-fees awarded as well. *See Ustrak*, 851 F.2d at 987–88.

Respectfully submitted,

JOSEPH H. HUNT
Assistant Attorney General

JOHN R. LAUSCH, JR.
United States Attorney

BRIGHAM J. BOWEN
Assistant Director
Federal Programs Branch

*/s/ Charles E.T. Roberts*
Charles E.T. Roberts (PA Bar No. 326539)
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, DC 20530
Phone: (202) 305-8628
Fax: (202) 616-8470
E-Mail: charles.e.roberts@usdoj.gov
*Counsel for Defendant*