IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

THE CITY OF CHICAGO,

                Plaintiff,

     v.

WILLIAM P. BARR, in his
official capacity as the
Attorney General of the
United States,

                Defendant.

Case No. 18 C 6859

Judge Harry D. Leinenweber

## MEMORANDUM OPINION AND ORDER

For the following reasons, the Court withdraws its declaration that 8 U.S.C. §§ 1373 and 1644 are unconstitutional and declines the Attorney General's proposal to modify the nationwide scope of the injunction against the compliance conditions. (*See* 10/10/2019 Final Judgment and Order, Dkt. No. 86.) Considering this opinion and the Seventh Circuit's April 29, 2020 opinion, as amended on June 4, 2020, the parties shall submit either an agreed amended final judgment and order or competing final judgment and orders for the Court to consider on or before February 2, 2021.

### I. PROCEDURAL POSTURE

The Court considers certain modifications to its October 10, 2019 final judgment and order as directed by the Seventh Circuit

on remand. *See City of Chi. v. Barr*, 961 F.3d 882 (7th Cir. 2020). That appeal and this remand are the result of two consolidated cases where the Attorney General appealed preliminary and permanent injunction orders—one addressing the notice and access conditions on FY 2017 Byrne JAG grant applicants and the other addressing the conditions on FY 2018 Byrne JAG grant applicants. *See, e.g., City of Chi. v. Barr*, 405 F. Supp. 3d 748 (N.D. Ill. 2019); *City of Chi. v. Sessions*, 321 F. Supp. 3d 855 (N.D. Ill. 2018). For a detailed discussion of the case history, facts, and issues, the Court refers to its previous opinions and the recent opinion from the Seventh Circuit. *City of Chi.*, 961 F.3d 882; *City of Chi.*, 405 F. Supp. 3d 748; *City of Chi.*, 321 F. Supp. 3d 855.

On August 11, 2020, the Seventh Circuit returned its mandate. That mandate directed the Court to address the following two matters on remand: (1) whether "any other injunctive relief is appropriate in light of [its] determination that § 10153 cannot be used to incorporate laws unrelated to the grants or grantees" and (2) to "modify the injunction to require the Attorney General to calculate the City of Chicago's Byrne JAG grant as if the challenged conditions were universally inapplicable to all grantees." *City of Chi.*, 961 F.3d at 931–32.

The Court ordered the parties to meet and confer about the Seventh Circuit's decision and to submit a joint statement with their proposed modifications to the Court's final judgment and

order. (8/14/2020 Minute Entry, Dkt. No. 117.) The parties submitted their joint statement and proposed further briefing on the two issues. (9/11/2020 Joint Statement, Dkt. No. 118.) The Court adopted that briefing schedule. Based on those briefs, the Court now determines whether additional relief concerning the compliance condition is appropriate and whether it will adopt any proposed modifications to the injunction.

**A.  Additional Relief Concerning the Compliance Condition**

The Byrne JAG statute permits the Attorney General to require that an application for funding under the Byrne JAG program also include a certification that "the applicant will comply with all provisions of this part and all other applicable Federal laws." 34 U.S.C. § 10153(a)(5)(D). For FY 2018, the Attorney General's condition under this provision required certification of compliance with 8 U.S.C. §§ 1373 & 1644. The Attorney General previously defended this compliance condition on the basis that §§ 1373 & 1644 qualified as applicable federal laws. The Court found §§ 1373 & 1644 facially unconstitutional and thus unenforceable as part of the Attorney General's certificate of compliance with "applicable Federal laws." *City of Chi.*, 321 F. Supp. 3d at 875–76; *City of Chi.*, 405 F. Supp. 3d at 762–63.

The Seventh Circuit affirmed the Court's judgment that §§ 1373 & 1644 were not "applicable Federal laws" on different grounds. *See City of Chi.*, 961 F.3d at 898–99. Without reaching

- 3 -

the constitutional question, the Seventh Circuit held that the phrase "applicable Federal laws" includes only those laws that "apply by their terms to the award itself." *Id.* at 899; *see also id.* at 909. The Attorney General lacks the authority to impose laws that do not specifically apply to the grant or grantees as compliance conditions. *See id.* at 901. Because § 1373 and § 1644 do not specifically apply to the grant or grantees, they cannot be imposed as compliance conditions. *See id.*

The Seventh Circuit then remanded "for the district court to consider whether any additional injunctive relief is appropriate as to the unlawful imposition of the compliance condition." *Id.* at 911. The Seventh Circuit concluded that there is "no doubt that the Attorney General intends to continue to interpret § 10153 as allowing the incorporation of federal laws unrelated to the grant or grantees" and that, as a result, "proper relief in this case could include an injunction preventing the Attorney General from incorporating federal law unrelated to grants or grantees as a condition of the grant under § 10153." *Id.* at 912.

In light of the Seventh Circuit's remand, the parties agree that the Court should modify the first paragraph under the header "Permanent Injunction" of its final judgment and order to reflect the Seventh Circuit's conclusion that § 10153's reference to "all applicable Federal laws" only encompasses laws that expressly apply to federal grants or grant recipients. The parties do not

agree, however, on whether and how to modify the first paragraph under the header "Declaratory Relief"—declaring "that 8 U.S.C. §§ 1373 and 1644 violate the Tenth Amendment's anticommandeering principles and are therefore facially unconstitutional."

Chicago contends the Court's declaration that §§ 1373 and 1644 are unconstitutional should remain in effect. Chicago argues that Count Four of the Amended Complaint challenges §§ 1373 and 1644 "on grounds beyond just their application as funding conditions" and that "relief narrowly limited to the Byrne JAG program is therefore not complete relief." (Chi. Br. at 6, Dkt. No. 121.) Chicago also argues that "the Attorney General's pattern of aggressively enforcing an expansive interpretation of Section 1373 casts a 'continuing and brooding presence' over Chicago's Welcoming City Ordinance." (*Id.*) Chicago claims that only the Court's declaration that §§ 1373 and 1644 violate Tenth Amendment anticommandeering principles can "fully protect Chicago's right to set local law-enforcement priorities free from the threat of unlawful federal intervention." (*Id.*)

In response, the Attorney General argues the Court's declaration that §§ 1373 and 1644 are unconstitutional is unnecessary and moot. The Attorney General claims that, as framed in the Amended Complaint, Count Four ties §§ 1373 and 1644's constitutionality to their use in Byrne JAG award conditions. Thus, complete relief is satisfied by the injunction, and declaratory

relief is unnecessary and moot. The Attorney General also encourages the Court to practice constitutional avoidance. In doing so, he notes the Seventh Circuit's decision to practice constitutional avoidance in its remanding opinion, calling it "controlling precedent" that "determined that the proper scope of declaratory relief as to [§§] 1373 and 1644 is exactly none, because they are 'inapplicable' as related to Byrne JAG award conditions." (Gov. Resp. at 3 (citing *City of Chi.*, 961 F.3d at 911), Dkt. No. 124.) The Attorney General emphasizes that the Seventh Circuit limited remand to determining "whether any additional *injunctive* relief is appropriate as to the [ ] imposition of the compliance condition," and the district court's completion of that task does not involve revisiting declaratory relief that the "Seventh Circuit determined was unnecessary." (Gov. Resp. at 2 (*City of Chi.*, 961 F.3d at 911).)

The Court withdraws its declaration that §§ 1373 and 1644 are unconstitutional. Although the Seventh Circuit's mandate does not order the Court to vacate its declaration, the remanding opinion indicates that the declaratory judgment is no longer necessary. *See Guzman v. City of Chi.*, No. 05 CV 6617, 2010 WL 11627264, at *1 (N.D. Ill. Feb. 25, 2010) (stating that a "court must carefully read the Seventh Circuit's opinion to determine what issues are law of the case because they were decided expressly or by necessary implication"). In reaching its conclusion, the Court considers the

- 6 -

context surrounding the Seventh Circuit's directive. *See Meds. Co. v. Mylan Inc.*, 257 F. Supp. 3d 1023, 1029 (N.D. Ill. 2017) ("A mandate is to be construed by considering the context") (citation, quotations, and alterations omitted). The language at issue here is in the second paragraph of a sub-section about the proper scope of the permanent injunction. Before reaching the substance of the scope issue, the Seventh Circuit states:

> At the outset, we note that a remand is necessary for the district court to consider whether any additional injunctive relief is appropriate as to the unlawful imposition of the compliance condition. The court imposed declaratory relief as to the constitutionality of § 1373, and injunctive relief as to the imposition of that condition. But because we have determined that the term "all other applicable Federal law" encompasses only law that by its terms applies to federal grants or grantees in that capacity, we have not reached that Tenth Amendment issue. **A remand is required to allow the district court to determine whether any additional injunctive relief is appropriate for the violation as we have framed it. For instance, the declaratory relief would no longer be necessary because § 1373 is inapplicable here, but other injunctive relief might be proper, such as enjoining the Attorney General from interpreting the phrase "all other applicable federal law" to include laws that do not explicitly apply by their terms to the grant or grantees.** The Attorney General relied on that misuse of § 10153 to impose the § 1373 compliance condition on Chicago. In the FY 2018 grant, the government continues to require a certification of compliance with § 1373, but perhaps anticipating the foreclosure of that option, added the requirement of certification of compliance with the parallel provision in § 1644.

*Id.* at 911 (emphasis added).

As explained by the Seventh Circuit, declaratory judgment is no longer necessary to award complete relief to Chicago. By

employing the doctrine of constitutional avoidance, the Seventh Circuit did not reach the question of §§ 1373's and 1644's constitutionality. The Court, in addressing the violation as framed by the Seventh Circuit, reaches the same conclusion. The Court follows the fundamental principle of judicial restraint and forbears to "resolve a constitutional dispute unless that [resolution] is absolutely necessary." *Frier v. City of Vandalia, Ill.*, 770 F.2d 699, 701 (7th Cir. 1985).

Chicago argues an expansive injury beyond the Byrne JAG program necessitates maintaining the declaration. This lawsuit, however, focuses on Chicago's injury from unlawful conditions attached to Byrne JAG fund grants. Chicago argues the declaration is necessary to control a "continuing and brooding presence" and to "fully protect Chicago's right to set local law-enforcement priorities free from the threat of unlawful federal intervention." (Chi. Br. at 6.) But these issues go far beyond the scope of this case. The Court cannot divorce Chicago's arguments against §§ 1373 and 1644 from the central subject of this dispute.

The Seventh Circuit's opinion forbidding the application of §§ 1373 and 1644 as conditions to Byrne JAG award grants moots this issue. "Federal courts may not give opinions on moot questions or abstract propositions." *Dorel Juvenile Grp., Inc. v. DiMartinis*, 495 F.3d 500, 503 (7th Cir. 2007) (citing *Calderon v. Moore*, 518 U.S. 149, 150 (1996)). Whether these statutes "remain

ostensibly enforceable federal laws that the Department could invoke against the City by other means" is not the crux of this case nor a live controversy appropriate for the Court to decide. (Chi. Br. at 1.) Accordingly, the Court withdraws its declaration that §§ 1373 and 1644 are unconstitutional.

## B. Proposed Modifications to Injunction

The Court's final order and judgment expressly "run[s] to the benefit of all Byrne JAG applicants and recipients" and is "not limited to the City of Chicago and its sub-grantees." (Final Judgment and Order at 4.) But the Court stayed its injunction "as to all Byrne JAG grantees other than the City of Chicago and its sub-grantees" pending the Seventh Circuit's final opinion and judgment. (*Id.*) The Court noted that the "stay shall terminate automatically if the Seventh Circuit issues a final ruling . . . that affirms the nationwide application of the FY 2017 injunction." (*Id.*)

The Seventh Circuit determined that under the Byrne JAG program "the amount received by a specific state or locality is dependent on the calculations related to the other states and localities." *City of Chi.*, 961 F.3d at 921. Thus, it found "the imposition of the conditions" should be enjoined "to the extent necessary to ensure that Chicago receives the grant award that it would be entitled to if the unlawful conditions were not imposed." *Id.* at 929. Because the Seventh Circuit understood that the

nationwide injunction "is necessary to provide complete relief to Chicago itself, the concern with improperly extending relief beyond the particular plaintiff does not apply, and therefore there is no reason to stay the application of the injunctive relief." *Id.* at 932.

Although the Seventh Circuit understood that the "interrelated and interdependent" nature of Byrne JAG awards likely necessitated nationwide relief, *id.* at 929–30, the Seventh Circuit instructed the Court to modify the language of the injunction to be as limited as possible, such that it would require the Attorney General to calculate Chicago's Byrne JAG award "as if the challenged conditions were universally inapplicable to all grantees." *Id.* at 930. Accordingly, the Court allowed the Attorney General the opportunity to explain (1) whether he can calculate Chicago's Byrne JAG award as if no grantee or potential grantee were subject to the unlawful conditions; (2) if so, how that calculation would work; and (3) why the Attorney General believes this approach suffices to meet the requirements set forth in the Seventh Circuit's decision.

### 1. *Byrne JAG Funds Calculation*

The Attorney General provides a declaration from Tracey Trautman, the Principal Deputy Director of the Bureau of Justice Assistance ("BJA") within the Office of Justice Program ("OJP") of the United States Department of Justice ("DOJ"), to explain the

statutory formula and calculation process for Byrne JAG awards. (*See* Trautman Decl., Gov. Br., Ex. A, Dkt. No. 122-1.) Trautman explains that the BJA calculates Byrne JAG awards according to the statutory formula provided in 34 U.S.C. § 10156. (*Id.* ¶ 2.)

### a. State Awards

Under the statutory formula, "each state's award allocation is based on its population and the number of reported violent crimes in the state, and is calculated each year for every state." (*Id.*) Every state is then "offered the opportunity to apply for its award allocation," which includes a 60% allocation to the state government and 40% reserved for direct awards to units of local government within that state. (*Id.*) Of the 60% that goes to the state, a certain statutorily calculated amount "must be used by that state to make 'pass-through' subawards to units of local government." (*Id.*) The allocation of these subawards is subject to each individual state's discretion. (*Id.*) Illinois "has made no subawards to Chicago with funds from the state JAG award for fiscal year 2017, 2018, or 2019." (*Id.*)

"[N]o state has rejected a JAG award offer or otherwise been disqualified from receiving one." (*Id.* ¶ 5.) Were a state to decline, based on the unlawful conditions or otherwise, "the funds allocated to that state would be made available to units of local government within the state in accordance with 34 U.S.C. § 10156(f)." (*Id.*) Whether "a state receives, accepts, or declines

an offer of a JAG award also does not affect the size of an award to another state." (*Id.*)

Two other statutes require compliance-based reductions or penalties to states' initial Byrne JAG award calculations, regardless of whether the state accepts a JAG award—the Sex Offender Registration and Notification Act ("SORNA"), 34 U.S.C. § 20927(a), and the Prison Rape Elimination Act ("PREA"), 34 U.S.C. § 30307(e)(2)(A). (*Id.* ¶ 6.) SORNA imposes a 10% reduction on a state's JAG award if the state does not substantially implement its standards. (*Id.* ¶ 7.) Similarly, PREA imposes a 5% reduction to any DOJ grant funds, including JAG awards, for any state that does not certify full compliance with its standards. (*Id.* ¶ 8.) If a state declines its JAG award, all money—including any SORNA or PREA reallocation or bonus funds would be reallocated to units of local government only within that state. (*Id.* ¶¶ 7–8.) If a state accepts its JAG award and faces a SORNA or PREA penalty, it may apply for the penalty funds through a process called direct reallocation. (*Id.*) SORNA and PREA "penalties and direct reallocation awards are calculated separately from JAG allocations, but are reflected in a state's award offer." (*Id.* ¶ 6.) "Penalties and direct allocation awards are calculated based on the formula allocations for JAG awards." (*Id.*) Their calculation is not affected by whether a jurisdiction accepts its JAG award. (*Id.*)

If penalty funds are not reallocated, they become "bonus" funds. (*Id.* ¶ 9.) Decisions about whether and how to distribute these "bonus" funds among compliant states or whether and how to distribute the "bonus" funds in a targeted fashion "are made prior to JAG allocation calculations." (*Id.*) These decisions "are made without regard to whether a state will receive, accept, or reject a JAG award offer or file a legal challenge to award conditions." (*Id.*) SORNA and PREA penalties, reallocation awards, and bonus funds "are awarded without regard to whether any state accept[s] JAG funds." (*Id.* ¶ 10.)

### b. *Direct Local Awards*

BJA also awards Byrne JAG funds directly to localities, like Chicago. (*See id.* ¶ 1.) Unlike state awards, "it is common for a small percentage of units of local government to decline direct local JAG awards each year for a variety of reasons." (*Id.* ¶ 11.) 34 U.S.C. § 10156(d)(4) provides the statutory formula that BJA uses each year to calculate what are known as "disparate" groups of jurisdictions. (*Id.* ¶ 11 n.1.) If the locality is part of a disparate group of jurisdictions, declined funds remain within that group "to be divided up among themselves at the discretion of the remaining members of the group." (*Id.* ¶ 11.) If the locality is not part of a disparate group or a whole disparate group declines, the declined funds "remain with OJP to be distributed in future fiscal years." (*Id.*)

Such funds are "frequently [used for] DOJ priority projects that are distinct from the JAG formula program, but can also include augmenting the total amount of JAG funding that is run through the formula in a future fiscal year." (*Id.*) "Roughly 40% of local JAG awards are made to disparate groups each year." (*Id.* ¶ 11 n.1.) Chicago is usually part of a disparate group of jurisdictions within Cook County. (*Id.*) For fiscal year 2020, Chicago's disparate group included Berwyn, Calumet, Chicago Heights, Cicero, Harvey, Matteson, Maywood, and Skokie. (*Id.*)

### 2. The Attorney General's Proposal

The Attorney General's position is that complete relief in this case does not require a nationwide injunction. (*See generally* Gov. Br. (citing Manion, J.'s concurrence in the judgment and the conflict on a nationwide injunction with the Second Circuit's decision in *New York v. Department of Justice*, 951 F.3d 84, 90–91 (2d Cir. 2020)).) Instead, the Attorney General proposes the Court "(1) limit the injunction to Chicago and, at most, Illinois and other units of local government within Chicago's disparate group of jurisdictions, and (2) if necessary, limit OJP's discretion to allocate toward a future year of Byrne JAG funding any funds declined by a locality because of the immigration-related conditions." (Gov. Br. at 8, Dkt. No. 122.) The Attorney General roots this proposal in Trautman's explanation of the statutory formula and calculation process. Per this explanation, the

- 14 -

Attorney General argues that the statutory formula already calculates Byrne JAG awards as if the challenged conditions were universally inapplicable because the BJA calculates all state and local JAG awards regardless of whether the jurisdiction will accept or decline the award. As a result, the immigration-related conditions do not affect how the statutory formula is run.

When a state declines a Byrne JAG award, those funds are reallocated to localities within the declining state. Similarly, the immigration-related conditions do not affect reallocation of SORNA and PREA penalties to a non-compliant state or bonus allocations to compliant states. Thus, the Attorney General concludes that the immigration-related conditions do not impact the calculation of Byrne JAG allocations among different states nor do they impact the calculation of Byrne JAG allocations between localities in a given fiscal year.

When a locality declines a JAG award, the reallocation differs based on whether the locality is part of a disparate group. For jurisdictions that are part of a disparate group, declined funds are allocated among the remaining members of that disparate group at the group's discretion. For jurisdictions that are not part of a disparate group or if an entire disparate group declines, the declined awards remain with the OJP "for a variety of potential uses." (*Id.* at 6.) One such use is to augment total JAG funding available nationwide in a future year. The Attorney General

characterizes this as a "slim possibility." (*Id.*) Ultimately, the
Attorney General argues these "effects are either nil (in the case
of localities that are part of a disparate group of jurisdictions
other than Chicago's) or easily accounted for, if necessary (in
the case of localities that are not part of any disparate group)."
(*Id.*)

In response, Chicago argues the nationwide injunction should
remain in place because it is both necessary to provide Chicago
complete relief and the proper remedy under the Administrative
Procedure Act ("APA"). Chicago contends the Attorney General's
explanation demonstrates that unused funding, either due to a
locality's decision to decline funds or due to a denial of funds
to the locality because of the unlawful conditions, can impact the
size of Chicago's Byrne JAG award in future years. To Chicago,
these effects necessitate a nationwide injunction.

Chicago argues the Attorney General's proposed injunction
asks the Court to substitute the present injunction with a
different one still with nationwide effect—one that would prohibit
the Attorney General from "augmenting the total amount of JAG
funding that is run through the formula in a future fiscal year."
(Chi. Resp. at 1-2 (citing Trautman Decl. ¶ 11), Dkt. No. 123.)
Chicago contends this proposal would contravene the Seventh
Circuit's mandate, replacing a "carefully drawn injunction with
one that could affirmatively harm not only Chicago, but also every

other jurisdiction eligible for Byrne JAG funds in perpetuity, by ensuring the Attorney General cannot augment the total pool of funding distributed to those jurisdictions through the Byrne JAG formula." (Chi. Resp. at 2.)

### 3. *Scope of the Injunction*

The Seventh Circuit instructed the Court to "modify the injunction to require the Attorney General to calculate the City of Chicago's Byrne JAG grant as if the challenged conditions were universally inapplicable to all grantees." *City of Chi.*, 961 F.3d at 931–32. The Seventh Circuit gave this directive while discussing its intent to provide "complete relief to Chicago itself." *Id.* at 929. This is a "limitation" that the Seventh Circuit felt the injunction "should reflect . . . [as] the narrowest relief that will redress the injury." *Id.* at 929–30. Thus, the Seventh Circuit's instruction to modify the injunction was expressly given "[t]o clarify that focus." *Id.* at 930. The Court revisits the scope of the injunction under the lens of this instruction.

The "scope of injunctive relief is dictated by the extent of the violation established. . . ." *Califano v. Yamasaki*, 442 U.S. 682, 702 (1979). Injunctive relief should be "no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs." *Id.* A court "may impose the equitable relief necessary to render complete relief to the plaintiff, even if that relief extends incidentally to non-parties." *City of Chi.*, 961

- 17 -

F.3d at 920-21. "When the court believes the underlying right to be highly significant, it may write injunctive relief as broad as the right itself." *Zamecnik v. Indian Prairie Sch. Dist. No. 204*, 636 F.3d 874, 879 (7th Cir. 2011) (citing 1 Dan B. Dobbs, *Law of Remedies* § 2.4(6) (2d ed. 1993)).

The Seventh Circuit found that once it "concluded that the Attorney General is without the authority to impose the challenged conditions, the court's role should be to ensure that Chicago receives the grant it would have been entitled to absent the unlawful conditions." *City of Chi.*, 961 F.3d at 922. It continued, "[t]hat can only be assured if the Byrne JAG awards as a whole are calculated absent the imposition of the unlawful conditions." *Id.* Trautman's explanation of the Byrne JAG statutory formula and calculation process clarifies certain ambiguities, some flagged by Judge Manion in his concurrence. *See id.* at 929 ("At oral argument, the Attorney General again declared only that it is 'unclear' whether funds from another applicant could increase Chicago's award if the conditions rendered that applicant unable to retain or obtain a Byrne JAG award . . ."); *see also id.* at 934-36 (Manion, J., concurring in the judgment) (explaining the Byrne JAG statute). Even as clarified, the imposition of the unlawful conditions on other jurisdictions can impact Chicago's grant award in future years. Thus, while the Attorney General initially calculates Chicago's Byrne JAG grant award as if the conditions were

universally inapplicable, the conditions still impact the overall award calculation for Chicago.

The Attorney General acknowledges that Chicago's Byrne JAG award is impacted if any locality, within Illinois or in another state, declines or is denied funds because the DOJ can use those "declined funds to augment the total amount of JAG funding available nationwide in a future fiscal year." (Gov. Br. at 6.) This means that imposing the unlawful conditions on other localities could result in a larger award for Chicago in future grant years. Whether the unlawful conditions could result in an increase or decrease to Chicago's award, the Seventh Circuit made clear that any impact is unacceptable. *See City of Chi.*, 961 F.3d at 922. Therefore, as the Court previously concluded, the only way to provide complete relief to Chicago is by enjoining the unlawful conditions program-wide.

The Attorney General's proposed alternative injunction is an unacceptable alternative because it is both underinclusive and overinclusive. The Attorney General proposes the Court "(1) limit the injunction to Chicago and, at most, Illinois and other units of local government within Chicago's disparate group of jurisdictions, and (2) if necessary, limit OJP's discretion to reallocate toward a future year of Byrne JAG funding any funds declined by a locality because of the immigration-related conditions." (Gov. Br. at 8.) As to the first part of the proposal,

limiting the injunction to Chicago alone fails to account for the inarguable effect that decisions of other localities within Chicago's disparate group and Illinois have on Chicago's Byrne JAG award. Nor can the Court cannot feasibly limit the injunction to Illinois because, as explained by Trautman and acknowledged by the Attorney General, decisions made by localities outside of Illinois can impact Chicago's Byrne JAG award. These proposed limitations are underinclusive and would not provide Chicago with complete relief.

In the second part of his proposal, the Attorney General attempts to account for the acknowledged impact of the unlawful conditions. The Attorney General asks the Court to replace the existing nationwide injunction with one that enjoins the augmentation of the overall pool of Byrne JAG funds available in future grant years with funds declined by localities. This proposal is overinclusive. The effect of the proposal reaches beyond the Byrne JAG program into the decision-making processes of this administration and future administrations. It does not specifically target the unlawful conditions nor is it more narrowly tailored than the existing nationwide injunction. Further, this overly broad proposed injunction is only necessary if the unlawful conditions are still imposed on jurisdictions other than Chicago. Enjoining the conditions program-wide eliminates the need for this alternative.

The Court does not, and did not previously, issue a nationwide injunction lightly. It is aware, as was the Seventh Circuit, of the Second Circuit's decision in *New York v. Department of Justice*, 951 F.3d 84, 90–91 (2d Cir. 2020). *See City of Chi.*, 961 F.3d at 887. Nevertheless, a nationwide injunction is necessary and proper to protect Chicago. *See City of Chi.*, 961 F.3d at 929 ("Courts have an obligation to award *proper* relief.); *id.* (finding "program-wide application is necessary to provide complete relief to Chicago itself"); *see also City of Chi.*, 405 F. Supp. 3d at 767–71 (explaining the need for a permanent nationwide injunction); *City of Chi.*, 321 F. Supp. 3d at 876–82 (same). Because the Court refuses to adopt the Attorney General's proposal based on equitable principles, it need not reach Chicago's APA argument.

The Seventh Circuit instructed the Court to modify the injunction so that it reflects "the narrowest relief that will redress the injury." *City of Chi.*, 961 F.3d at 929–30. Specifically, "[a]ny impact on other grantees in that context is incidental, rather than direct, and the injunction does not provide those grantees with independently-enforceable rights." *Id.* Therefore, the parties are instructed to propose modifications to the injunction that clarify this focus and the intent to provide Chicago "with complete relief, while keeping the injunction as narrow as possible." *Id.* As directed, such modifications should require the Attorney General to calculate Chicago's Byrne JAG grant

as if the challenged conditions were universally inapplicable to all grantees.

## II.  <u>CONCLUSION</u>

For the reasons stated herein, the Court withdraws its declaration that 8 U.S.C. §§ 1373 and 1644 are unconstitutional and declines the Attorney General's proposal to modify the nationwide scope of the injunction against the compliance conditions. Considering this opinion and the Seventh Circuit's April 29, 2020 opinion, as amended on June 4, 2020, the parties shall submit either an agreed amended final judgment and order or competing final judgment and orders for the Court to consider on or before February 2, 2021.

**IT IS SO ORDERED.**

_____
    Harry D. Leinenweber, Judge
    United States District Court

Dated: 1/13/2021