IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

THE CITY OF CHICAGO,

                Plaintiff,

      v.

MERRICK B. GARLAND, Attorney
General of the United States,

              Defendant.

Case No. 18 C 6859

Judge Harry D. Leinenweber

## MEMORANDUM OPINION AND ORDER

Plaintiff's motion for award of attorneys' fees (Dkt. No. 99) is granted in part and denied in part. Plaintiff is entitled to $391,168.55 in attorneys' fees.

## I. BACKGROUND

In addition to describing the most relevant facts below, the Court incorporates the facts from its earlier rulings. *See City of Chicago v. Sessions,* 264 F.Supp.3d 933 (N.D. Ill 2017) ("*Sessions I*"), *City of Chicago v. Sessions,* 321 F.Supp.3d 855 (N.D. Ill. 2018) ("*Sessions* III"), and *City of Chicago v. Barr,* 405 F.Supp.3d 748 (N.D. Ill. 2019) ("*Barr I*"). Plaintiff City of Chicago ("Chicago" or the "City") filed the instant motion seeking to recoup a portion of the expenses it incurred over the course of three years and two lawsuits disputing certain conditions attached to the Byrne Justice Assistance Grant ("JAG") funds. For ease of

reference, citations to "2017 Dkt. No." correspond to the docket for the City's challenge to the FY 17 Byrne JAG conditions, *Chicago v. Sessions,* 17-cv-05720 (N.D. Ill. 2017) (Leinenweber, J.), and "2018 Dkt. No." refers to the current docket.

The City first filed suit against the Attorney General in August 2017, challenging the Government's attachment of certain notice, access, and compliance immigration conditions to the FY 2017 JAG funds (collectively the "Original Conditions") and seeking preliminary and permanent injunctions. In September 2017, the Court issued a preliminary, nationwide injunction as to the notice and access conditions. *Sessions* I*,* 264 F.Supp.3d at 951. The Seventh Circuit affirmed. *Chicago v. Sessions,* 888 F.3d 272, 286 (7th Cir. 2018) ("*Sessions* II"). The Seventh Circuit later decided to take up the limited issue of the injunction's nationwide scope *en banc. Chicago v. Sessions*, 2018 WL 4268817 (7th Cir. June 4, 2018). While the *en banc* appeal was pending, the Court permanently enjoined all three Original Conditions. *Sessions* III*,* 321 F.Supp.3d at 881. The Court's final order limited the injunction to the FY 2017 JAG awards, in part based on the Attorney General's representation that the Government had "taken [the Court's order] to heart" and was "looking at the conditions for next year against the backdrop of your prior decision." (8/15/18

Tr. at 5, 2017 Dkt. No. 213; FY 2017 Final J. at 3, 2017 Dkt. No. 211.)

Despite the Attorney General's representation to this Court, the FY 2018 JAG awards re-imposed substantially similar versions of the Original Conditions, as well as three additional immigration-related conditions. First, the FY 2018 JAG award imposed a new compliance condition that is materially identical to the FY 2017 compliance condition. Because the constitutional analysis applies equally to both the FY 2017 compliance condition and the new FY 2018 compliance condition, hereinafter both are included in references to the Original Conditions. *See Barr I,* 405 F.Supp.3d at 762. Second, the FY 2018 awards also included two entirely new conditions, the additional certification condition, and the harboring condition (together, the "New Conditions"). On October 12, 2018, having not received a FY 2018 JAG award by the anticipated deadline of September 30, 2018, Chicago filed this lawsuit challenging the FY 2018 immigration conditions and once again seeking a permanent injunction. On September 19, 2019, the Court granted summary judgment in favor of the City, relying on precedent from the FY 2017 litigation. *Barr I,* 405 F.Supp.3d at 761–68. In light of "the extent of the violation established [] and DOJ's track record in this litigation" the Court issued a

permanent injunction for the FY 2018 grants and all future years. *Id.* at 770.

Chicago reserved the right to move for attorneys' fees in connection with the FY 2018 litigation in its amended complaint. (Amend. Compl. at 57, 2018 Dkt. No. 34.) Following the Court's entry of a final judgment and order, the City filed this motion for attorneys' fees. The litigation, now settled, the Court turns to the merits.

## II.  LEGAL STANDARD

The Equal Access to Justice Act ("EAJA") allows the Court to award attorneys' fees and expenses "to the prevailing party in any civil action brought by or against the United States or any agency or any official of the United States acting in his or her official capacity" to the same extent "that any other party would be liable under the common law" for attorneys' fees. 28 U.S.C. § 2412(b). The American Rule is that parties to litigation pay their own fees. *Chambers v. NASCO, Inc.,* 501 U.S. 32, 45–46 (1991). The Supreme Court has recognized an exception where a party has "acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Id.* at 45–46. The claimant "bears the burden of establishing entitlement to [a fee] award and documenting the appropriate hours expended and hourly rates." *Hensley v. Eckerhart,* 461 U.S. 424, 437 (1983).

### III.  DISCUSSION

#### A.  Eligibility

The threshold question for eligibility under the EAJA is whether Chicago is a "prevailing party." A prevailing party "is one who has been awarded some relief by the court," including judgments on the merits and the award of nominal damages. *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Hum. Res.,* 532 U.S. 598, 603 (2001). Chicago was awarded complete relief by the Court, including a permanent injunction preventing the Attorney General from imposing both the Original Conditions and the New Conditions in FY 2018 or in the future. Consequently, there is no question that the City is the prevailing party and eligible to pursue an award of attorneys' fees under the Section 2412(b) of the EAJA.

#### B.  Bad Faith Analysis

The second question is whether Chicago can establish entitlement to fees under the common law. At common law, parties ordinarily pay their own fees, unless the conduct falls within the limited list of recognized exceptions. *Chambers,* 501 U.S. at 45. The "bad faith exception" awards attorneys' fees where the non-moving party "acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Id.* at 45–46. The bad faith exception is rooted in the court's inherent power to "to fashion an appropriate

sanction for conduct which abuses the judicial process." *Id.* 44-45. The Court may issue such sanctions where "the offender has willfully abused the judicial process or otherwise conducted litigation in bad faith." *Salmeron v. Enter. Recovery Sys., Inc.,* 579 F.3d 787, 793 (7th Cir. 2009). This inherent authority is not, however, "a grant of authority to do good and rectify shortcomings of the common law" and should be "exercised sparingly." *Zapata Hermanos Sucesores, S.A. v. Hearthside Baking Co., Inc.,* 313 F.3d 385, 390-91 (7th Cir. 2002).

There is no bright-line rule for what constitutes bad faith. "Courts have used phrases such as harassment, unnecessary delay, needless increase in the cost of litigation, willful disobedience, and recklessly making a frivolous claim." *Mach v. Will Cnty. Sheriff,* 580 F.3d 495, 501 (7th Cir. 2009) (citing *Stive v. U.S.,* 366 F.3d 520, 521-22 (7th Cir. 2004) (collecting cases)). The Seventh Circuit has also looked to 28 U.S.C. § 1927, which similarly awards fees for unreasonable and vexatious conduct. *Id.* In the context of a Section 1927 award, the Seventh Circuit has held that litigants are not required to prove subjective bad faith or malice. *Dal Pozzo v. Basic Mach. Co., Inc.,* 463 F.3d 609, 614 (7th Cir. 2006). Fee awards may also be appropriate under an objective bad faith standard, which only requires proof of reckless indifference to the law. *Id.* For example, "[i]f a lawyer pursues

a path that a reasonably careful attorney would have known, after appropriate inquiry, to be unsound, the conduct is objectively unreasonable and vexatious." *Id.* (internal quotation marks and citations omitted).

Chicago alleges it is entitled to a fee award based in part on the Attorney General's pre-litigation decision to re-impose the Original Conditions, as well as impose the New Conditions, all based on authority the Seventh Circuit already concluded he did not have. In response, the Attorney General argues that the bad faith exception only awards attorneys' fees for conduct occurring during the course of the litigation. The Attorney General, however, misstates the rule. Pre-litigation actions can be a basis for bad faith in addition to a party's conduct during the pendency of the litigation. *Roadway Exp., Inc. v. Piper,* 447 U.S. 752, 766 (1980). Fees based on pre-litigation conduct are only appropriate, however, where such conduct is distinct from the substantive claims at issue. *Zapata Hermanos Sucesores,* 313 F.3d at 391. For example, in a claim for breach of contract, attorneys' fees cannot be awarded based on allegations that the breach was committed in bad faith. *Grochocinski v. Mayer Brown Rowe & Maw LLP*, 452 B.R. 676, 683 (N.D. Ill. 2011). Fees may be awarded, however, based on a finding that pre-suit conduct, such as a strategy decision, was done in bad faith. *Id.*

The Attorney General made a tactical decision to impose meritless conditions instead of pursuing alternative means, such extending the FY 2017 injunction, to achieve the same goals. The Court finds this pre-litigation decision to be eligible for consideration as to whether it was done in bad faith. This analysis is distinct from the substantive challenges to the FY 2018 conditions raised by the City in its complaint, which alleged the Attorney General did not have the authority to impose any of the FY 2018 immigration conditions. Because the conduct at-issue in this motion is distinct from the conduct in Chicago's complaint, the Court will consider conduct occurring prior to the initiation of this suit in addition to the Attorney's General actions during the course of litigation.

### 1. *The Original Conditions*

Chicago seeks to collect fees for its re-litigation of the Original Conditions, arguing the Attorney General's re-imposition of these conditions was in willful disregard for the Court's FY 2017 final judgment and binding Seventh Circuit precedent and therefore in bad faith. The Attorney General contends his re-imposition of the Original Conditions was merely to preserve his ability to enforce the conditions in FY 2018 if his litigation position changed. The Court disagrees with the Attorney General

and will award fees for the re-litigation of the Original Conditions.

This Court, relying on an unequivocal preliminary injunction opinion from the Seventh Circuit, explicitly rejected the Attorney General's rationale for the Original Conditions. Nevertheless, the Attorney General pressed ahead with his re-imposition of the Original Conditions and the two New Conditions in FY 2018. The Attorney General addressed the FY 2018 conditions during a hearing on August 15, 2018 where the Government explained that it was "looking at the conditions for [FY 2018] against the backdrop of [the Court's] prior decision." (8/15/18 Tr. at 5.) The Attorney General then admitted that "if [the Government] impose[s] the exact same conditions without notice and forces [Chicago] to affirmatively file a case, there might be other remedies available to the plaintiffs in that context." (*Id.* at 6.) The Court replied, "That would mean their lawyers would get paid." (*Id.*) Relying on that representation, the Court entered the final order and judgment on the Original Conditions, limited only to the FY 2017 JAG funds. (2017 Final Order at 3.)

Despite the Attorney General's August 15, 2018 assertions, the Government remained silent until November 2018. On November 2, 2018, the Attorney General posted a Special Notice on the JAG website. (FY 2018 Special Notice, Amended Compl., Ex. E, 2018 Dkt.

No. 34-5.) According to the Special Notice, the Attorney General would not enforce the Original Conditions as to Chicago while the current litigation remained pending. (*Id.* at 1–2.) During the nearly three months Chicago waited for the Attorney General to declare his intentions regarding the FY 2018 conditions millions of JAG dollars were awarded, all with the Original Conditions attached. By the time Chicago filed this lawsuit on October 12, 2018, the City had no reason to believe any award it received would not also include the Original Conditions.

The City was not required to sit idly by and wait for the Attorney General to re-impose the Original Conditions. During the course of this case, the Seventh Circuit made clear that "a plaintiff injured by an unconstitutional or unlawful action in one year does not need to suffer injuries repeatedly in each ensuing year — and separately sue after each injury — to obtain relief from the unlawful actions." *Barr* II*,* 961 F.3d at 910–11. The Attorney General also offers no reason for his delay in giving the City notice. In light of the Attorney General's representations to this Court, the weight of the precedent rejecting the Original Conditions, and the significant potential consequences for the Chicago, the Court concludes that the Attorney General's delay was unreasonable and unnecessary and in bad faith.

The fact that the Attorney General eventually gave notice that he would not enforce the Original Conditions does not limit the City's award. (FY 2018 Special Notice at 1–2.) The Special Notice was nothing more than a posting to the JAG website, which holds no binding legal authority. As this Court later recognized, the Attorney General was committed to imposing these immigration conditions on JAG awards. *Barr I*, 405 F.Supp.3d at 770. The Attorney General's pursuit of the immigration conditions, in Chicago and across the country, made it reasonable for the City not to rely exclusively on statements with no legally binding authority.

Instead of these bad faith actions, which caused the City to litigate the conditions once again, there was a simple solution. The Attorney General could have agreed to extend the FY 2017 injunction to FY 2018 when it was before this Court in August 2018. This would have avoided further litigation while the injunctive relief was reviewed by the Seventh Circuit. If the injunction was lifted by the Seventh Circuit, the Attorney General would have had the same enforcement remedies it claims to have been preserving. Instead, the Attorney General failed to subject itself to a legally binding order, abused the judicial process, and needlessly increased the City's litigation costs.

The Attorney General's failure to substantively defend the Original Conditions in its FY 2018 briefing also does not change this analysis. When the Seventh Circuit affirmed the FY 2017 preliminary injunction, it left no question that the outcome would be the same at the permanent injunction stage and in future years. The Attorney General acknowledged this by declining to either raise new arguments or explain why re-re-imposing these conditions was reasonable. Simply put, a "litigant can't be allowed to file repeated meritless suits with impunity just so long as he does not protract any one of them unreasonably." *Carr v. Tillery,* 591 F.3d 909, 919 (7th Cir. 2010). The same is true here. The Attorney General cannot be allowed to cause Chicago to file repeated suits to defend against the Government's meritless imposition of immigration-related JAG award conditions. The Court thus finds the Attorney General acted in bad faith even after posting the Special Notice.

For all these reasons, and subject to the limitations described below in Section III.C., *supra,* Chicago is entitled to attorneys' fees for its FY 2018 challenge to the Original Conditions.

### 2. The New Conditions

Chicago also seeks fees for its challenge of the New Conditions. The City argues that the Attorney General's rationale

- 12 -

for the New Conditions was already "foreclosed by orders of both this Court and the Seventh Circuit." (Mem. at 13, 2018 Dkt. No. 99.) The Attorney General argues that because the New Conditions were "untested in any court" and the City offers nothing to suggest the imposition or defense was done to harass, Chicago has not met its burden. The Court agrees with Chicago and will award fees for the work challenging the New Conditions.

The Seventh Circuit's holding in *Mach v. Will County Sheriff* is instructive. In *Mach,* the Court concluded that discovery "erased any doubt that [five of plaintiff's] arguments had even a chance of success. *Mach,* 580 F.3d at 501. Even so, the plaintiff waited until after the defendant filed its motion for summary judgment to abandon these claims. *Id.* at 498, 501. The Seventh Circuit awarded fees to the defendant, finding that the plaintiff inflicted unnecessary summary judgment costs on the defendant, despite knowing "that five of the six bases for his claims were 'worthless' and non-starters." *Id.* at 501.

Here, the Attorney General knew that that his claims of authority were meritless. In defense of the New Conditions, the Attorney General raised already-rejected arguments regarding the scope of the Government's authority under the JAG statute. *Barr I,* 405 F.Supp.3d at 763–64, 766. Indeed, the Court expressly noted that the Attorney General "is not free to disregard the Seventh

Circuit's rulings in its briefings before this Court." *Id.* at 767.
Consequently, the Court summarily rejected the Government's argued
for authority to impose the harboring condition, explaining that
the Seventh Circuit already concluded that imposing immigration
conditions falls outside the communication and coordination duties
delegated to the Attorney General under 34 U.S.C. 10102(a)(1)-(5).
*Id.* at 766. The Court also called attention to the fact that
Government did not explain why the Seventh Circuit's analysis of
34 U.S.C. 10102(a)(6) in the context of the notice and access
conditions should not equally apply to the harboring condition.
*Id.* at 766-67. Moreover, in its only defense of the additional
certification requirement "the DOJ presented no arguments
regarding the source of its statutory authority . . . and for that
reason seems to have conceded the point." *Id.* at 763.

Like *Mach,* the Attorney General "permitted litigation to
continue" despite clear precedent that had erased any "doubt that
his arguments had even a chance of success." *Mach,* 580 F.3d at
501. The Attorney General could have extended the FY 2017
injunction to include the New Conditions, sparing the City the
cost of litigating and allowing the review by the Seventh Circuit
to go forward. He did not. For this reason, the Attorney General
"inflicted unnecessary costs upon [the City]" and an award of
attorneys' fees for this conduct is appropriate. *Id.*

For these reasons and subject to the limitations described below in Section III.C., *supra,* Chicago is entitled to attorneys' fees for its FY 2018 challenge to the New Conditions.

## C. EAJA Award

Finding that Chicago is entitled to attorneys' fees under the bad faith exception, the Court must determine the appropriate size of the award. To calculate the proper award, the Court will use "the lodestar method, multiplying the number of hours reasonably expended on the litigation . . . by a reasonable hourly rate." *Pickett v. Sheridan Health Care Ctr.,* 664 F.3d 632, 639 (7th Cir. 2011) (quoting *Hensley v. Eckerhart,* 461 U.S. 424, 433 (1983)) (internal quotation marks omitted). Based on the hourly rates and hours described below, the Court calculates a lodestar amount of $391,168.55.

### 1. Hourly Rates

A reasonable hourly rate is an attorney's market rate, measured by the "rate that lawyers of similar ability and experience in the community normally charge their paying clients for the type of work in question." *Spegon v. Catholic Bishop of Chicago,* 175 F.3d 544, 555 (7th Cir. 1999) (quoting *Bankston v. State of Ill.,* 60 F.3d 1249, 1256 (7th Cir. 1995)) (internal quotation marks and citations omitted). The Seventh Circuit has long held that an "attorney's actual billing rate for comparable

work is 'presumptively appropriate' to use as the market rate."
*Id.* (quoting *People Who Care v. Rockford Bd. of Educ., Sch. Dist.
No. 205,* 90 F.3d 1307, 1310 (7th Cir. 1996)); *see also Montanez v.
Simon,* 755 F.3d 547, 553 (7th Cir. 2014) ("The best evidence of
the market rate is the amount the attorney actually bills for
similar work."); *Pickett,* 664 F.3d at 640 ("We presume that an
attorney's actual billing rate for similar litigation is
appropriate to use as the market rate."). Only when the requesting
attorney or attorneys do not have a billable rate, will the Court
look to the "next best evidence" — the hourly rates of lawyers
with comparable skills, experience, and reputation. *Spegon,* 175
F.3d at 554; *People Who Care,* 90 F.3d at 1310. The fee applicant
bears the burden of establishing the attorneys' market rates.
*Pickett,* 664 F.3d at 640. Once "the fee applicant satisfies [their]
burden, the burden shifts to the other party to offer evidence
that sets forth a good reason why a lower rate is essential." *Id.*
(internal quotation marks and citations omitted).

Chicago's attorneys rely on their actual billable rates from
2018 to establish their market rates. Wilmer Cutler Pickering Hale
and Dorr LLP ("WilmerHale") presents evidence of the firm's 2018
billable rates via attorney affidavit. *(*See Holtzblatt Decl. ¶¶ 6–
16, 19, 2018 Dkt. No. 99-2). WilmerHale further offers an
engagement letter from a prior representation, evidencing that the

City previously agreed to pay the firm's billable rates, with a 10% discount. (2015 Engagement Ltr., Holtzblatt Decl., Ex. 1, 2018 Dkt. No. 99-3.) Chicago's local counsel, Riley Safer Holmes & Cancila LLP ("Riley Safer"), also presents an attorney affidavit to establish the firm's 2018 billable rates. Mr. Crowley reviewed each attorney's and paralegal's billable rate and attests to the fact that the rate being sought was the same or lower than the rate being charged to other clients during the same month. (Crowley Decl. ¶¶ 6-17, 2018 Dkt. No. 99-4.)

The Attorney General argues that the Holtzblatt and Crowley Declarations are "self serving" and insufficient to establish each firm's billable rates (Oppn. at 16-17, 2018 Dkt. No. 105). But the Attorney General's argument misinterprets the rule in the Seventh Circuit. Cases discussing the need for extrinsic evidence beyond an attorney's affidavit do so when examining the hourly rates of attorneys with no fee-paying clients, such as those working on contingency or for public aid organizations. *See, e.g., Uphoff v. Elegant Bath, Ltd.,* 176 F.3d 399, 407 (7th Cir. 1999) (evaluating the appropriate hourly rate for attorneys with no fee paying clients); *Spegon,* 175 F.3d at 555 (same). Chicago's attorneys established their market rates based on the actual billable rates charged to and paid by firm clients. Consequently, the Court need not look to the next best evidence and undertake a review of rates

charged by attorneys with similar skills, experience, and reputation. The Court concludes that the Holtzblatt and Crowley Declarations adequately establish the market rates for Chicago's attorneys.

As a result, the burden now shifts to the Attorney General to explain why this Court should award a lower hourly rate. The Attorney General argues that Chicago's award should be consistent with the hourly rates this Court awarded in the similar case, *City of Evanston et al v. Barr,* 2020 WL 1954142 (N.D. Ill. Apr. 23, 2020). According to the Attorney General the rates sought by Chicago will result in a "windfall" and evidences the City's "end-run" around the rate caps found in Section 2412(d) of the EAJA. While the fee caps in Section 2412(d) could be instructive if Chicago failed to meet its burden, those caps are inapplicable to Chicago's fee award under Section 2412(b). Furthermore, a Section 2412(d) award is only available to a subset of plaintiffs to which Chicago is not a member. *See* 28 U.S.C. § 2412(d). It is therefore not an "end run" around the Section 2412(d) fee caps for Chicago to appropriately seek fees under Section 2412(b). The Court further notes that fee award is not a "windfall." The fee award here represents the market cost of reasonable legal services rendered that were unnecessarily caused by the Attorney General's bad faith actions. The Seventh Circuit recognizes that "[p]revailing

plaintiffs are entitled not to a 'just' or 'fair' price for legal services, but to the market price for legal services." *Pressley v. Haeger,* 977 F.2d 295, 299 (7th Cir. 1992).

For these reasons, the Court will base its Lodestar calculation on the billing rates identified in the Holtzblatt and Crowley affidavits.

### 2. *Hours Expended*

The prevailing party is entitled to compensation for reasonable hours expended and must "exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary." *Spegon,* 175 F.3d at 552 (quoting *Hensley,* 461 U.S. at 434). Chicago seeks to recover the attorneys' fees for 753 hours billed by 13 attorneys and 3 paralegals. Chicago argues this is reasonable given the work necessary to litigate this case over the course of thirteen months. In addition, the City explains that it reasonably allocated the work, delegating research and writing to more junior attorneys, with partners serving in a supervisory role. The Attorney General raises a number of objections.

The Government first asks for a blanket exclusion of the hours billed by all but two WilmerHale attorneys, Mr. Holtzblatt and Ms. Jennings. The Attorney General contends that because this case was an extension of the FY 2017 litigation the work could have been

handled by a single partner and a single associate. The Court disagrees.

Division of labor is common in law firms. Firms are not required to staff just one or two lawyers to a single case. Instead, where there is a large team involved in the litigation the court must "scrutinize a fees petition carefully for duplicative time." *Jardien v. Winston Network, Inc.,* 888 F.2d 1151, 1160 (7th Cir. 1989). This case presented complex issues of constitutional law and statutory interpretation with far-reaching consequences and involved a number of simultaneous workstreams. For that reason, the Court will not grant a blanket exclusion of the time billed by all but two attorneys. Instead the Court will look at time spent on specific tasks (*e.g.,* drafting the complaint, revising the motion for summary judgment) and determine whether the entries reflect excessive time spent or duplication of efforts by multiple attorneys or paralegals.

The Attorney General further objects to individual time entries in Chicago's fee petition based on three alleged deficiencies: (1) unnecessary or duplicative work; (2) unreasonable hours dedicated to a particular task; and (3) vague diary entries. (Jt. Statement at 3-4, 2018 Dkt. No. 99-1; Oppn. at 18-20.) The Attorney General also objects to the time spent on

Chicago's fee petition. The Court reviews the Attorney General's objections below.

### a. *Unnecessary or Duplicative Work Objections*

The time entries the Attorney General views as unnecessary or duplicative fall into four categories: (1) internal meetings; (2) more than one attorney attending events; (3) the FY 18 preliminary injunction motion; (4) work unrelated the FY 2018 litigation.

The Government objects to dozens of time entries as redundant or excessive solely because another attorney billed for the same internal or client meeting, hearing, or other event. The Seventh Circuit does not enforce a "hard-and-fast rule as to how many lawyers can be at a meeting or how many hours lawyers can spend discussing a project." *Gautreaux v. Chicago Hous. Auth.,* 491 F.3d 649, 661 (7th Cir. 2007). Such a blanket rule for internal communications would be "totally unrealistic" given that the "practice of law often, indeed usually, involves significant periods of consultation among counsel." *Tchemkou v. Mukasey,* 517 F.3d 506, 511 (7th Cir. 2008). In fact, "[t]alking through a set of authorities or seeking advice on a vexing problem is often significantly more efficient than one attorney's trying to wade through the issue alone." *Id.* at 511–12. The same is true for external meetings and hearings, where it is often necessary for attorneys "to spend at least some of their time conferring with

colleagues, particularly their subordinates, to ensure that a case in managed in an effective as well as efficient manner." *T.P. ex rel. Kimbrely R. v. City of Chicago Pub. Sch. Dist. 299,* 2011 WL 1197353, at *9 (N.D. Ill. Mar. 29, 2011) (quoting *Williams v. R.W. Cannon, Inc.,* 657 F.Supp.2d 1302, 1312 (S.D. Fla.2009)).

The proper analysis for events involving multiple attorneys is whether the diary entries include sufficient details that the Court can discern whether the time was reasonably spent. *Tchemkou,* 517 F.3d at 512. Having reviewed these records, representing approximately 100 hours across the 13 months of litigation, the Court finds that the diary entries for internal and external meetings, hearings, and other allegedly duplicative events provide sufficient detail to identify the subject matter of the meeting or event. As a result, the Court concludes this time was reasonably expended and is recoverable by Chicago.

Second, the Attorney General objects to all hours billed for the preparation of a FY 2018 motion for preliminary injunction. The Government argues that because this motion was never filed, the time spent on it was unnecessary and therefore not compensable. The Court disagrees.

Whether a course of action is reasonable is measured by the circumstances at the time, not with the benefit of hindsight. The Attorney General knew in July 2018 that the Government should not

attempt to re-enforce the FY 2017 conditions in FY 2018. The Attorney General admitted as much in August 2018 when he stated, on the record, that the Government was reviewing the proposed FY 2018 conditions. The Attorney General then went silent and took no further action until November 2018. Chicago's FY 2018 JAG submission sat unanswered for months, leaving the City without clarity on whether the Attorney General intended enforce any of the FY 2018 immigration-related conditions. It was therefore reasonable for the City of Chicago to prepare a new preliminary injunction motion up through the time the City issued its Special Notice.

Having reviewed the billing records, the Court determines that the less than 40 hours spent researching, drafting, and preparing the unfiled FY 2018 motion for preliminary injunction was reasonable. Moreover, none of the bills reflect work done after November 2, 2018, the date the Special Notice was posted. For these reasons, the Court will not strike any of the time spent on the unfiled FY 2018 motion for preliminary injunction.

Third, the Attorney General objects to all time spent on the FY 2019 JAG application, amicus briefs and appellate work. The Government argues these tasks are unrelated to the FY 2018 litigation. The Court agrees in part.

Time attributable to the FY 2019 JAG solicitation falls into two categories: (1) a motion for leave to cite the FY 2019 conditions as supplemental authority in connection with Chicago's FY 2018 motion for summary judgment, and (2) preparation of Chicago FY 2019 JAG application. The supplemental authority motion is clearly related to this litigation and therefore time attributable to its preparation and filing are compensable. Time spent preparing the FY 2019 JAG application is also related to the FY 2018 litigation and compensable. The FY 2018 litigation sought a permanent injunction covering the FY 2018 JAG funds and all future JAG funds, thus bringing the FY 2019 within the scope of this litigation. In addition, Chicago's careful response to these conditions was necessary to preserve its litigation position in the ongoing FY 2018 lawsuit. Finally, the need for attorney involvement in the application process was directly caused by the Attorney General's insistence on re-imposing the same conditions. Indeed, the FY 2019 re-imposition is the very same conduct this Court has concluded was in bad faith.

The Court will, however, strike as unnecessary and unrelated to the FY 2018 litigation all time attributable to amicus briefing and appellate work. In the Fall of 2018 and Spring of 2019 Chicago's attorneys were coordinating amicus briefs, preparing Seventh Circuit disclosure forms, and generally communicating with

the appellate team. During this time, the FY 2018 litigation remained pending before this Court. Thus, any Seventh Circuit filing or appellate coordination could not be related to this litigation. The same must be true of the time related to the amicus briefs. No such briefs were filed before this Court in connection with Chicago's motion for summary judgment or the Attorney General's motion to dismiss. Consequently, without more information the Court must conclude that the time entries related to amicus briefs reflect work done in connection with the then-pending FY 2017 appeal. Time spent on the FY 2017 litigation not compensable, and the Court thus excludes Riley Safer entries 12, 13, 23, 26, 33, 41, 43. (*See* Annotated Attorney Bills, Oppn., Ex. A, 2018 Dkt. No. 105-1.)

### b. *Excessive Hours Objections*

The Attorney General also objects to the hours related to certain tasks as excessive. According to the Government, Chicago spent excessive hours preparing the complaint and amended complaint, preparing the motion to reassign, reviewing work done by Mr. Holtzblatt and Ms. Jennings, finalizing documents for filing, cite checking, and performing non-legal tasks, such as entering appearances. For the reasons set out below, the Court agrees in part and reduces Chicago's award for the time spent on certain of these tasks.

Chicago spent nearly 140 hours working on its complaint and the amended complaint. Of those 140 hours, approximately 34 hours were dedicated to drafting and 64 hours were dedicated to editing. Unlike most lawsuits, however, the City had a starting point for its complaint, its FY 2017 lawsuit challenging substantially similar conditions. The initial factual basis for of the FY 2017 complaint and the FY 2018 complaint were nearly identical, and only required the additional history related to the FY 2017 litigation and the addition of the New Conditions. Even so, a comparison of the two documents reflects substantial editing of the background sections, in addition to the necessary additional details. Moreover, a review of the changes from original FY 2018 complaint to the FY 2018 amended complaint reveals changes beyond the incorporation of the Attorney General's November 2018 Special Notice, including information that was known when the initial complaint was filed. It is not reasonable for Chicago to seek fees for stylistic, as opposed to substantive, revisions and the City does not offer a compelling reason for the number of hours billed to these tasks. For these reasons the hours billed to drafting and editing the complaint and amended complaint will be reduced by 50%. This reduction will apply to WilmerHale entries 15, 17, 18, 19, 21, 24-26, 28, 30, 54, 55, 57, 73, 76, 78-82, 85, 87, 89, 91–94, 96, 98, 100, 102, 104, 105, 107, 108, 135, 140, 143, 144, 146,

148, 149, 151–55, 157, 160 and Riley Safer entry 16. (*See* Annotated Attorney Bills.) The approximately 16 hours spent on research for the complaint and amended complaint is not unreasonable and will not be reduced.

Chicago seeks fees for ten hours for work on its motion to reassign this case to this Court, given its relationship to the FY 2017 litigation. The Court will not strike all work done on this motion, as the Attorney General suggests. The motion to reassign was the natural result of Chicago having to file another lawsuit related to JAG award conditions. Moreover, ten hours is not an unreasonable amount of time to spend on this motion. This is particularly true where the bulk of the writing and editing on this brief was done by Mr. Evans, one of the more junior associates working on this case. Consequently, the Court will not disturb the hours relating to the motion to reassign.

Chicago also objects to any time spent reviewing work completed by Mr. Holtzblatt and Ms. Jennings as excessive and unnecessary. To start, Ms. Jennings was the primary drafter on a number of documents, including the complaint and the motion for summary judgment. To exclude any time dedicated to revising her work on these topics would be contrary to a common practice in the legal profession—collaboration. Similar to the rejection of the Attorney General's insistence on one attorney per meeting, the

Court will not enforce a one attorney per document rule. During the course of its review of the billing entries, the Court reviewed the hours spent on each project and the specific tasks therein, such as drafting, editing, researching, etc. For the reasons set forth above the drafting and editing hours for the complaint and amended complaint will be reduced. For the remaining projects related to litigating this case on the merits, including the motion for summary judgment and the opposition to the motion to dismiss, the Court concluded that the overall hours spent were reasonable. For that reason, the Court will not provide any further reductions for the time spent reviewing work done by Mr. Holtzblatt and Ms. Jennings.

Chicago seeks fees for approximately 75 hours attributable to finalizing documents for filing and cite checking. The Court agrees that approximately 40 hours on cite checking is excessive and will reduce the award for these hours by 50%. The Court similarly finds excessive the 35 hours attributable to finalizing and filing documents, particularly where these entries are distinct from the ongoing edits during the drafting process. The Court will also reduce these entries by 50%. These reductions will apply to WilmerHale entries 105, 157, 159, 160, 273, 278, 282, 292, 295-97 336, 339, 341, 354 and Riley Safer entry 19. (*See* Annotated Attorney Bills.)

Finally, the Attorney General challenges as unreasonable certain tasks that it characterizes as non-legal. None of the entries identified by the attorney general are the type of purely administrative tasks that can be delegated solely to non-legal staff. Reviewing court orders to ensure compliance, clarifying orders and courtroom processes with chambers, coordinating briefing schedules and filing any necessary motions with the court, assembling exhibits, drafting declarations and other ancillary filings, and coordinating strategy are all tasks that at minimum require legal oversight and are typically performed by attorneys. The Court will, however, reduce the 12 hours sought in connection with drafting and filing appearances. Appearances are routine documents. Even considering the number of attorneys that entered appearances in this case, 12 hours is unreasonable. The Court therefore reduces those hours by 50%. This reduction will apply to Riley Safer entries 18, 20, 21, 25, 31. (*See* Annotated Attorney Bills.)

### c. *Vagueness Objections*

The Attorney General objects to approximately 18 entries as vague. While the majority of the disputed entries provide sufficient detail regarding activity undertaken and its relationship the FY 2018 litigation, some do not. WilmerHale entries 16, 56, 162, 261, 381 and Riley Safer entries 32 and 38

fail to provide the detail necessary to connect the tasks to the FY 2018 litigation. (*See id.*) Consequently, these entries will be stricken from the award.

### d. Fee Petition Objections

The Attorney General objects to the 123.6 hours Chicago spent on its fees motion as excessive. The Seventh Circuit has held that the excessiveness of the fee petition hours depends on a comparison of the time spent on the fee petition and the time spent reasonably litigating the merits. *Spegon,* 175 F.3d at 554. If the fee petition hours are deemed disproportionate to the time spent on the merits, the Court may reduce the hours to make the award reasonable. *Id.* In *Ustrak v. Fairman,* the Seventh Circuit found that 15 minutes of fee petition work for every hour of merits work was excessive. 851 F.2d 983, 987–88 (7th Cir. 1988). The *Ustrak* award was reduced by two-thirds, or to 5 minutes of fee petition work for every hour of merits work. A similar adjustment was made to the award in *Gibson v. City of Chicago,* 873 F.Supp.2d 975 (N.D. Ill. 2012). The *Gibson* court concluded that 10 minutes of fee petition work for every hour of merits work was excessive. *Id.* at 992–93. The court then cut the award in half, to 5 minutes per hour of merits litigation work. *Id.*

Here Chicago seeks to recover 123.6 hours for the preparation and filing of the Government's fee petition. After making the

adjustments detailed above the City is able to reasonably recover 527.05 hours for litigating on the merits. This results in a ratio of approximately 14 minutes on the fee petition for every hour spent litigating the merits. The Court concludes this is excessive and in line with the reductions in *Ustrak* and *Gibson* reduces the award by 2/3.

Based on the foregoing hours reductions, Chicago is awarded $391,168.55 in attorneys' fees. This breaks down into $18,584.75 to be awarded to Riley Safer and $372,583.80 to WilmerHale.

## IV. CONCLUSION

For the reasons stated herein, Plaintiff's motion for award of attorneys' fees (2018 Dkt. No. 99) is granted in part and denied in part. Plaintiff is entitled to $391,168.55 in attorneys' fees.

**IT IS SO ORDERED.**

_____
        Harry D. Leinenweber, Judge
        United States District Court

Dated: 4/28/2021